17568

Blaine JOHNSON and Evelyn K. JOHNSON, Respondents, v. SOUTH CAROLINA TAX COMMISSION, Appellant

(110 S. E. (2d) 173)

156

*Messrs. Daniel R. McLeod, Attorney General,* and *James M. Windham, Assistant Attorney General,* of Columbia, *for Appellant,*

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

August 19, 1959.

TAYLOR, Justice.

The sole question presented in this appeal is: Are the amounts held by the banks or finance companies and credited to Respondents' reserve account taxable in that respective year by the State of South Carolina?

Appellant, South Carolina Tax Commission, assessed additional income tax against respondents for the years 1949 through 1953, inclusive, in the sum of $3,258.39. This assessment was paid under protest and an action brought to

recover the sum so paid, under Section 65-2662, Code of Laws of South Carolina, 1952.

Respondents for these years had reported as gross income sums which were held by the finance companies or banks purchasing notes and security instruments from respondents, in what is termed respondents' reserve account. Respondents, after reporting the amounts held as gross income or sales, then proceeded to treat such amounts as deductions from gross income. During these years, respondents were in the business of selling trailers, with their principal place of business in Charleston, South Carolina. Under their plan of operation, where the transaction was not on a cash basis, the purchaser would execute a note for the unpaid purchase price of the trailer, plus insurance, interest, and in some cases other charges, and execute a mortgage on the trailer as security for the payment of the note. Respondents generally endorsed these notes to the finance companies or banks either with recourse or with guaranty of the unpaid balance of the note. As each note was transferred to the bank or finance company, it would remit to respondents the balance due them on the selling price less whatever amount was credited on its books to respondents' reserve account, this amount usually being five per cent of the unpaid balance on each note. In the case of the purchaser's contract becoming due and unpaid, the finance company would charge this reserve account with the unpaid balance. The ultimate balance in the reserve account would be paid to respondents after all indebtedness had been discharged. The agreements between respondents and the banks or finance companies provided that respondents could only receive that portion of the reserve credited when the same exceeded a certain prescribed percentage of the balance outstanding on the total indebtedness.

Section 65-251, Code of Laws of South Carolina, 1952, appears as follows:

"The words 'gross income' mean the income of a taxpayer derived from salaries, wages or compensation for personal

service, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce, sales or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property, and also from interest, rent, dividends, securities or the transaction of any business carried on for gain or profit and income derived from any source whatsoever. The amount of all such items shall be included in the gross income of the income year in which received by the taxpayer, unless, under the methods of accounting permitted under this chapter, any such amounts are to be properly accounted for as of a different period."

As heretofore stated, these amounts were reported by respondents as part of gross sales or income; and in order to make deductions therefrom as contended by respondents, there must be some statutory provision. Section 65-259, Code of Laws of South Carolina, 1952, under the heading "Deductions", appears as follows:

"In computing net income there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or accrued (in case the books are kept on the accrual basis) during the income year in carrying on any trade or business, including:

"(a) As to individuals, reasonable wages of employees for services actually rendered in producing such income;

"(b) As to partnerships, reasonable wages of employees and a reasonable allowance for copartners or members of a firm, for services actually rendered in producing such income, the amount of any such salary allowance to be included in the personal return of the copartner receiving it;

\* \* \*

"(7) Debts ascertained to be worthless and actually charged off the books of the taxpayer within the income year; \* \* \*."

· Respondents allege in their complaint that their accounts have been kept and their income tax returns filed on a basis of cash receipts and disbursements and not upon an accrual basis. Appellant, by way of answer, denies this allegation and pleads that even if this be correct, there is sufficient statutory authority to shift the method to accrual basis so as to correctly reflect respondents' income under Section 65-281, Code of Laws of South Carolina, 1952, which appears as follows:

"The net income of a taxpayer shall be computed in accordance with the method of accounting regularly employed in keeping the books of such taxpayer. But if such method does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commission does clearly reflect the income."

Respondents' books reveal that they made use of inventories and set up notes and accounts as well as contracts receivable. Even though respondents contend that they were on a cash basis, such contention is not controlling. *Aluminum Castings Co. v. Routzahn,* 282 U. S. 92, 51 S. Ct. 11, 75 L. Ed. 234. And it has been held in a number of cases that where inventories are involved in accounting the accrual method will more clearly reflect the actual income. *Aluminum Castings Co. v. Routzahn, supra; Herberger v. Commissioner of Internal Revenue,* 9 Cir., 195 F. (2d) 293. At the time a sale is made and the transaction completed, all events have occurred to fix the amount and determine the liability of the parties from whom it is forthcoming. It having been agreed between the seller and buyer, the one to sell and the other to purchase, with a portion of the purchase price in cash or trade-in and the balance being covered by a note or other security, the transaction is completed; the sale is consummated for all tax purposes. Respondents were not required to discount such notes or securities; but if they did so as a matter of convenience or found it a desirable method of financing their business, the purchaser was involved only incidentally. Indeed, the finance

company or bank was not bound to accept such paper; but having found it expedient to enter into a financial arrangement whereby a dealer reserve account to take care of unpaid debts is set up, there is no provision under Section 65-259(7), Code of Laws of South Carolina, 1952, providing for deductons of such items.

Respondents complain that the amount of cash retained in the reserve account is not accessible to them except upon conditions to be thereafter made and should be reported only when received by the taxpayer. Under the accrual accounting system, the taxpayer reports on gross tax sales whether he has actually received such amounts or not. The income is taxable in the year in which the right to receive accrues. 27 Am. Jur., Income Taxes, Section 198, page 419.

As stated in *Spring City Foundry Co. v. Commissioner of Internal Revenue,* 292 U. S. 182, 54 S. Ct. 644, 645, 78 L. Ed. 1200:

"* * * Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. * * *"

When the right to receive an amount becomes fixed, the right accrues. *Security Flour Mills Co. v. Commissioner of Internal Revenue,* 321 U. S. 281, 64 S. Ct. 596, 88 L. Ed. 725; *Spring City Foundry Co. v. Commissioner of Internal Revenue, supra; Brown v. Helvering,* 291 U. S. 193, 54 S. Ct. 356, 78 L. Ed. 725. The record reveals that the amounts retained by the bank or finance company were entered on the books of said bank or finance company as liabilities to respondents. Such monies were vested in and belonged to respondents as collateral security for the payment of respondents' contingent liability to the respective bank or finance company. Only one of two things could happen to the dealers reserve account: Either it would be paid to respondents in cash or it would be used to satisfy respondents' obli-

gations. In either event the title thereto was vested in respondents. *Commissioner of Internal Revenue v. Hansen (Commissioner of Internal Revenue v. Glover, Baird v. Commissioner of Internal Revenue)*, 360 U. S. 446, 79 S. Ct. 1270, 3 L. Ed. (2d) 1360.

For the foregoing reasons, we are of opinion that the amounts held in dealer reserve accounts constitute gross income to respondents and taxable in the year so credited, that the order appealed from should be reversed; and it is so ordered. Reversed.

STUKES, C. J., and OXNER, LEGGE and Moss, JJ., concur.