18610

Mrs. Yvonne B. HUNT, Appellant, v. SOUTH CAROLINA TAX COMMISSION, Respondent

(153 S. E. (2d) 321)

148

*Messrs. Herbert, Dial & Windham,* of Columbia, *for Appellant,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Joe L. Allen, Jr.,* and *Joseph C. Coleman, Assistant Attorneys General,* of Columbia, *for Respondent,*

February 27, 1967.

G. Badger Baker, Acting Justice:

This action was brought by Mrs. Yvonne B. Hunt, Appellant, against the South Carolina Tax Commission, respondent, under Section 65-2661 *et seq.,* Code of 1962, to recover the sum of $22,829.47, constituting additional income taxes, penalties and interest assessed by Respondent for the income years of 1960, 1961, and 1962.

The issue for determination is whether a part of Appellant's income derived from the sale of patent rights in May of 1958 was earned before or on or after January 1, 1960.

Section 65-258 of the 1952 Code was amended in April of 1960 by Act No. 690, now codified as Section 65-258 of the 1962 Code. The pertinent provisions of the amendment provide for exclusion from gross income of:

"One half of gains and losses arising from the sale or exchange of capital assets, as defined in this chapter, after allowance for expenses relating to such sale or exchange; and * * *."

Section 7 of Act No. 690, omitted in Section 65-258 of the 1962 Code which omission is not questioned in this proceeding, provides that:

"This act shall, upon approval by the Governor, be effective with respect to income earned on and after January 1, 1960."

Appellant is the owner of two patents covering inventions in "let-offs", a device used in textile machinery, and has an exclusive license from the owner of two other patents for the rights to manufacture, sell and use let-offs. On May 1, 1958, the Appellant entered into an agreement with Southern Loom Development Company whereby the Hunt Patents

and her licensee rights were sold, assigned, transferred and conveyed to the Development Company. The consideration flowing to Appellant is a stipulated royalty per unit as scheduled in the agreement. We are not concerned with the agreed payment per unit from May 1, 1958 to January 1, 1960, the effective date of the capital gains amendment, since the protested tax assessments commenced with the year of 1960. The per unit consideration varies however with the time periods in the agreement.

The time periods in the contract which determine the per unit consideration are from May 1, 1958 to December 31, 1958; January 1, 1959, through December 31, 1961; January 1, 1962 through December 31, 1962; and January 1, 1963 through the remainder of the life of the contract.

During the period from January 1, 1959 through December 31, 1961, which includes the taxable years of 1960 and 1961, the Development Company agreed to pay Appellant "the sum of Twenty ($20.00) Dollars on each of the first one thousand and Seventeen ($17.00) Dollars on each of the next eighteen thousand five hundred (18,500) Hunt Let-off units, shipped during that period, * * *." This provision of the contract provides that the minimum number of units shipped during 1960 shall be not less than 6,750 units, and not less than 8,250 units during 1961.

During the period commencing January 1, 1962, and ending December 31, 1962, the Development Company contracted to pay "the sum of Eleven ($11.00) Dollars on each of the first eight thousand five hundred (8,500) Hunt Let-off units shipped during that period, and Six ($6.00) Dollars per unit for the remaining units shipped during said period." The minimum units to be shipped in this year, 1962, was not less than nine thousand (9,000).

Under the foregoing paragraphs and provisions of the contract Appellant would be entitled to receive, following the shipment of the minimum number of units, in 1960 the sum of $117,750.00, in 1961 the sum of $143,250.00,

and in 1962 the sum of $96,500.00. The minimum shipments or sales were exceeded in each of the years and Appellant was paid accordingly.

The minimum number of units to be shipped each year, or "quota" as designated in the contract, are not absolute or inflexible. Provision for failure to meet quotas, or minimum amounts, is a part of the contract. If the Development Company failed to meet the quota during any period by not more than 10%, it shall not be considered in default if "it shall, in addition to meeting its quotas for the next two (2) succeeding years, ship the number of Hunt Let-off units by which it failed to meet any preceding years quota."

Mrs. Hunt, the Appellant, filed her tax returns and paid the State income taxes, for the years 1960, 1961, and 1962, as in prior years, on the cash receipts and disbursements basis. The income from the sale of let-offs was treated as ordinary income in the returns for 1958 and 1959, but commencing in 1960 the capital gains deduction was applied and Appellant paid taxes on one-half the income received from the Development Company. In 1965 the capital gains deduction was disallowed by the Tax Commission and the total income, for the years involved, ruled to have been earned in May of 1958.

The question before the trial Judge, Honorable Louis Rosen, was whether the income was earned when the Sale of Patent agreement was executed, or earned when actually received by appellant, that is, during or at end of each of the taxable years of 1960, 1961, and 1962.

The case does not contain any factual issues. It was stipulated that Appellant reported the actual income received from the Development Company and that the income varied considerably in amount for each of the three years. The number of units shipped or sold by the Development Company each year exceeded the quota for the particular year. It was acknowledged that the Sale of Patent agreement was the sole document from which the question at issue was to be determined.

Judge Rosen found that Appellant, according to the terms of the agreement, had the right to receive, and did receive, royalty payments based upon the minimum number of units to be shipped each taxable year. This income, although received during 1960, 1961, and 1962, was held to have been earned when the agreement was executed and, therefore, not subject to capital gains treatment. The income received from the shipments of units in excess of the minimum per year was ruled to have been earned on or after January 1, 1960, and subject to capital gains classification.

The rationale of the Order is that the minimum payments derived from minimum shipments were "not conditioned upon some future event, but existed as a fixed and definite liability on the part of Southern Loom Development Company whether or not it sold any let-offs in the years involved," but that the royalties to be received per unit in excess of minimum shipments "were contingent upon a future event and that of the shipment or sale of the let-offs in quantities that exceeded the minimum" requirements.

The Tax Commission was directed to return to appellant the taxes, interest and penalties, on the income earned after January 1, 1960, in the amount of $6,549.52 with interest from the date of payment.

Appellant has appealed from that portion of the Order which holds that the income which was derived from the shipment of the minimum units per year was earned prior to January 1, 1960, and, accordingly, does not come within the capital gains deduction.

Cited as a controlling authority by the trial Court is the case of *Adams v. Burts,* 245 S. C. 339, 140 S. E. (2d) 586. In this case the taxpayer sold the timber on a tract of land which he owned for a total price of $63,017.00. The sale was made in 1958 and the purchase price was agreed to be paid on an installment basis, and was paid in installments of $3,000.00 in 1958, $12,767.00 in 1959, and $15,750.00 in each of the years 1960, 1961, and 1962. For the years

1958 and 1959, the taxes were paid upon all of the profit received in the installments for these years, but for the years 1960-1962 inclusive, the taxpayer deducted one half of the gains from the sale of the timber, relying upon Act No. 690 of 1960, *supra*. The Tax Commission disallowed the capital gains treatment for the years 1960-1962, which was followed by Court action upon the question of whether the income from the sale of the timber was earned prior to or on or after January 1, 1960. Several definitions of "earned" are contained in the opinion of the Court, including the established principle that "income is earned when all events have occurred which fix its amount and determine the liability of the party from whom it is forthcoming to pay."

The Court concluded that the income was earned prior to January 1, 1960, and the taxpayer could not "employ to his advantage Section 65-258(6) of the Code." The reason for the decision is succinctly stated in this quoted excerpt from the opinion:

"The record before us reveals that there was a completed sale of the timber in 1958 between the respondent here and the purchaser thereof. The sales price had been fully agreed upon, all events had occurred at that time to fix the amount to be paid by the purchaser and to determine the liabilities of the parties. The sale was consummated then for tax purposes. *Johnson v. South Carolina Tax Commission*, 235 S. C. 155, 110 S. E. (2d) 173. The respondent here, for reasons of his own, chose to defer the receipt of a part of the purchase price of the timber to subsequent years."

There was in the *Adams* case, *supra,* a single consideration to be paid upon an installment basis which did not alter the singleness of the consideration. The right to receive the total consideration became fixed or accrued when the contract was signed, and the taxpayer elected the installment method of reporting the profit to alleviate the hardship that would result if he had accepted the entire consideration when the sale was consummated.

It is the right to receive and not the actual receipt that determines whether income has accrued, or as stated in *Johnson v. South Carolina Tax Commission, supra*: "When the right to receive an amount becomes fixed, the right accrues."

The total consideration flowing to Appellant for the sale of the patent rights is not fixed in its gross amount in the contract for the obvious reason that the total was dependent upon an unknown factor, that being, the number of units which would be sold. The same flexible consideration is present for the years 1960, 1961, and 1962. It is recognized in the decision of the lower Court that the total consideration for the life of the contract or the total income to be received by Appellant for any one year could not be determined in 1958. Each would have to await the result of sales experience.

The entire consideration has not been apportioned whereby the Appellant would receive a minimum income for each year of the duration. All events had not occurred in May of 1958 to fix either a maximum or minimum amount to be paid by the purchaser to the seller. For instance, in 1960 the Development Company agreed to ship not less than 6,750 units and to pay a royalty per unit, however, this royalty per unit was not grounded solely upon a minimum number, but was geared to a total number of 25,250 units for 1960. For each year thereafter there is provided a minimum shipment but there is not a fixed total as in 1960.

The right to receive is affixed to a prior event, the manufacture and shipment. The liability to pay arises when shipment has been made. It is not stipulated in the contract that Appellant received in 1958 an unconditional right to a minimum consideration of $117,750.00 payable in 1960, $143,250.00 in 1961, or $96,500.00 in 1962. The contract permits a ten per cent variance with the right to make up the difference in the next two years before default could be declared. Further variance is shown in the contractual provision for liquidated damages in the sum of $120,000.00 in

case of default occurring in 1959, 1960, or 1961, less varying amounts depending upon the year or years of default within the limited time period.

The absence of intent to provide for a stipulated consideration in a named sum is also to be found in the paragraph that calls for liquidated damages. If the default arose during the year of 1960 the credit would be $30,000.00 plus an amount not exceeding $40,000.00 or such lesser amount as may have been paid on account of royalties. If the default occurred in 1961 the deductible credit is set at $70,000.00 plus an amount not exceeding $50,000.00 or such lesser amount as shall have been paid for royalties during that year. The liquidated damages condition does not extend beyond 1961, but its duration for 1960 and 1961 is, as already stated, indicative of the intent of the parties. For instance, a default in 1960 would have yielded by way of damages a smaller amount than actually received from minimum shipments. The same applies to the year of 1961.

The contract is not susceptible of the construction that Appellant chose to defer the receipt of a part of the purchase price in the form of a predetermined and prescribed minimum consideration to subsequent years. Appellant chose instead of a single or entire consideration a royalty method based upon units to be shipped or sold in subsequent years. It was not known in 1958 what the market demand would be in subsequent years. The fact that the market consumption exceeded the minimum shipments does not *per se* justify the conclusion of accrued income prior to 1960, rather than after January 1, 1960.

The royalty or consideration for each unit was not apportioned to each unit or as one unit in a whole, or as a part of a round sum, but was merely the fixing of a royalty per unit as the base from which the eventual consideration would be determined by later events. The income is therefore allocated to that year in which the right to receive became fixed and liquidated. There was not a severable and divisible obligation resting upon the purchaser to pay the

seller the per unit income up to the minimum shipment and then commence anew to pay the consideration as scheduled for the remaining units. A continuous consideration flowed from a continuous obligation commencing from the sale of unit number one and with each additional unit as it moved into the market. The Development Company could not claim compliance with the contract, to avoid default, by payment only for the minimum shipments in any one or more of the three years.

Parenthetically, it may be stated that Act No. 690, *supra,* employs the word "exclusion" rather than "deduction," but the word "exclusion" is not found in the codified amendment, Section 65-258(6), *supra.* This point is not of material importance as related to the question herein and, therefore, has not been discussed.

It is the opinion of this Court that the entire income received from the sale of the units was earned on and after January 1, 1960. That portion of the Order of the Court of Common Pleas which declares the Appellant had the right to receive a minimum consideration, or an accrued consideration, as of May 1, 1958 is in error, and is, accordingly, reversed.

The Appellant is entitled to the return of the entire amount of additional income taxes, penalties and interest assessed by the Respondent, to wit, $22,829.47, with interest thereon from the date of payment.

LEWIS, Acting C. J., BUSSEY and BRAILSFORD, JJ., and LIONEL K. LEGGE, Acting J., concur.