BERNARD KLEBANOW, PLAINTIFF-APPELLANT, v. SIDNEY GLASER, DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued March 5, 1979—Decided June 22, 1979.

*Mr. Laurence Reich,* argued the cause for appellant (*Messrs. Carpenter, Bennett* and *Morrissey,* attorneys; *Mr. Laurence Vogel* and *Mr. Norman Dorsen,* members of the New York bar, and *Mr. Laurence Reich* of counsel and on the briefs).

*Mr. Douglas G. Sanborn,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

SCHREIBER, J. Questioned in this case is the constitutionality of the retroactive effect of the State's capital gains tax, known as the Tax on Capital Gains and Other Unearned Income Act, *N. J. S. A.* 54:8B–1 *et seq.,* which was enacted on August 4, 1975 and applied to capital gains received on or after January 1, 1975.[1] After the Director of the Division of Taxation held that plaintiff's capital gains transaction on January 8, 1975 resulted in a taxable event as contemplated by the act, the plaintiff taxpayer appealed to the Appellate Division, which affirmed. 159 *N. J. Super.* 596 (1978). The matter is before us by virtue of plaintiff's appeal pursuant to *R.* 2:2–1(a).

Because plaintiff appealed from the Director's decision directly to the Appellate Division rather than to the Division of Tax Appeals, the record consists only of plaintiff's affidavit, correspondence between plaintiff's counsel and the Director, copies of plaintiff's tax returns, and a recitation of what occurred at an informal conference between the parties. At that meeting plaintiff was advised that the facts should be developed in a formal hearing before the Division of Tax Appeals. We agree. However, irrespective of that deficiency, we are satisfied on the record herein that the Director's determination should be affirmed. A summary of the factual picture emerging from the record follows.

Plaintiff moved from New York to Fort Lee in November 1974. On January 8, 1975 he sold certain securities, realizing capital gains of $11,879,000. He claims that the move

[1]This tax was repealed on July 8, 1976, effective July 1, 1976, as part of the legislation establishing the New Jersey Gross Income Tax Act. *N. J. S. A.* 54A:9–24.

from New York in November 1974 and the sale of the stock on January 8, 1975 were made in specific reliance upon the nonexistence of a New Jersey capital gains tax. At the time of the sale, however, there were pending in the Legislature *Assembly Bills* 1305 (introduced March 18, 1974), 1883 (introduced July 8, 1974), and 1949 (introduced July 15, 1974), each of which would have imposed a tax on gains resulting from the sale. or exchange of capital assets occurring after December 31, 1974.

The genesis of the Tax on Capital Gains and Other Unearned Income Act may be found in *Assembly Bill* 3556 (1975). The bill was introduced in the General Assembly on July 16, 1975, passed in the Assembly on July 18, 1975 and passed in the Senate with some amendments on July 21, 1975. The Assembly agreed to the amendments on July 25, 1975 and the Governor approved the measure on August 4, 1975. The act provided it was to "take effect immediately and shall be applicable with respect to unearned income earned, received or constructively accrued or credited to the taxpayer on or after January 1, 1975." *L.* 1975, *c.* 172, § 25.

Plaintiff contends that the retroactive effect of the statute as applied to him is unconstitutional, arguing that when an individual voluntarily enters into a transaction relying on the nontaxability of the event, a subsequently adopted statute cannot constitutionally create tax consequences where none previously existed. He further claims that he had no awareness of the real possibility of such or similar legislation.

Plaintiff maintains that under the United States Supreme Court decisions when a new tax is levied, any retroactivity is impermissible if the circumstances which resulted in the taxable event were voluntarily created by the taxpayer. We do not agree with this broad proposition. Our analysis of the leading Supreme Court opinions, beginning with *Stockdale v. Atlantic Ins. Co.,* 87 *U. S.* (20 *Wall.*) 323, 22 *L. Ed.* 348 (1874), indicates that retroactive provisions of income tax statutes have invariably been held to be consistent with the

due process clauses in the Fifth and Fourteenth Amendments of the United States Constitution.

In *Stockdale v. Atlantic Ins. Co., supra,* Congress had enacted a law in 1870 which imposed a tax on dividends declared by corporations, the tax to be paid by the corporations. Earnings accrued in 1869 were subjected to the tax. In response to a challenge to this retroactive feature, the Court stated:

> The right of Congress to have imposed this tax by a new statute, although the measure of it was governed by the income of the past year, cannot be doubted; much less can it be doubted that it could impose such a tax on the income of the current year, though part of that year had elapsed when the statute was passed. [87 *U. S.* (20 *Wall.*) at 331, 22 *L. Ed.* at 351]

In *Brushaber v. Union Pacific R. R. Co.,* 240 *U. S.* 1, 36 *S. Ct.* 236, 60 *L. Ed.* 493 (1916), the newly adopted federal income tax, enacted on October 3, 1913, was held constitutional though applicable to income realized on or after March 1, 1913. The Court in upholding the retroactivity reiterated approvingly the above quoted language from *Stockdale v. Atlantic Ins. Co., supra,* 240 *U. S.* at 20, 36 *S. Ct.* at 242, 60 *L. Ed.* at 502.

Some 14 years later the Supreme Court considered a modification in the capital gains provision of the income tax law. *Cooper v. United States,* 280 *U. S.* 409, 50 *S. Ct.* 164, 74 *L. Ed.* 516 (1930). The amendment, adopted on November 23, 1921, provided that the cost basis of property acquired by gift after December 31, 1920 would be the same as that of the donor, whereas before that date the basis had been the fair market value at the time of the gift. The taxpayer had acquired bank stock on November 1, 1921 (the donor having obtained the stock in 1918) and sold it on November 7, 1921. She claimed the retroactive effect of the enactment was invalid under the due process clause of the Fifth Amendment. In upholding the law the Court wrote:

That the questioned provision cannot be declared in conflict with the Federal Constitution, merely because it requires gains from prior but recent transactions to be treated as part of the taxpayer's gross income, has not been open to serious doubt since Brushaber v. Union Pacific R. Co. * * * and Lynch v. Hornby [247 *U. S.* 339, 38 *S. Ct.* 543, 62 *L. Ed.* 1149 (1918)]. [280 *U. S.* at 411, 50 *S. Ct.* at 165, 74 *L. Ed.* at 518]

In 1934 Congress, under the Silver Purchase Act, imposed for the first time a 50% tax on profits made from sales of silver. The tax reached backward to include transactions which occurred 35 days before the law's adoption. Considering the tax as a special income tax, the Court upheld its retroactivity.

As respects income tax statutes it long has been the practice of Congress to make them retroactive for relatively short periods so as to include profits from transactions consummated while the statute was in process of enactment, or within so much of the calendar year as preceded the enactment; and repeated decisions of this Court have recognized this practice and sustained it as consistent with the due process of law clause of the Constitution. Stockdale v. Atlantic Ins. Co. * * *; Brushaber v. Union P. R. Co. * * *; Lynch v. Hornby * * *; Cooper v. United States * * *. [*United States v. Hudson*, 299 *U. S.* 498, 500–501, 57 *S. Ct.* 309, 310, 81 *L. Ed.* 370, 372 (1937)]

In *Welch v. Henry*, 305 *U. S.* 134; 59 *S. Ct.* 121, 83 *L. Ed.* 87 (1938), the Supreme Court upheld the retroactivity of a provision in the Wisconsin income tax which initiated a tax separate and apart from the State's general income tax on dividends received from corporations whose "principal business" was "attributable to Wisconsin" under the Wisconsin taxing statute. The new taxing provision, effective March 27, 1935, imposed the tax on such dividends received in the years 1933 and 1934. Mr. Justice Stone, writing for the majority of the Court, explained:

The objection chiefly urged to the taxing statute is that it is a denial of due process of law because in 1935 it imposed a tax on income received in 1933. But a tax is not necessarily unconstitutional because retroactive. Milliken v. United States, [283 *U. S.* 15, 21,

51 *S. Ct.* 324, 326, 75 *L. Ed.* 809, 814 (1931) ], and cases cited. *Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute.*

\* \* \*

Assuming that a tax may attempt to reach events so far in the part as to render that objection valid, we think that no such case is presented here. *For more than seventy-five years it has been the familiar legislative practice of Congress in the enactment of revenue laws to tax retroactively income or profits received during the year of the session in which the taxing statute is enacted, and in some instances during the year of the preceding session.* See Untermyer v. Anderson, [276 *U. S.* 440, 48 *S. Ct.* 353, 72 *L. Ed.* 645 (1928)]. *These statutes not only increased the tax burden by laying new taxes and increasing the rates of old ones or both, but they redistributed retroactively the tax burdens imposed by preexisting laws.* [305 *U. S.* at 146–148, 59 *S. Ct.* at 125–126, 83 *L. Ed.* at 93–94; emphasis supplied]

▆▆ These cases demonstrate that in the income tax area retroactivity does not *per se* constitute a deprivation of property without due process. Retroactivity, at least with respect to income realized in the year in which the act was passed, has been validated irrespective of whether the statute created a new tax or increased tax burdens by revising an existing law. It has been upheld even though the taxpayer may not have been aware of its imminency and even though the triggering event may have occurred because of some voluntary action or inaction on the part of the taxpayer.[2]

---

[2] The New York Court of Appeals in *Clarendon Trust v. State Tax Comm'n*, 43 *N. Y.* 2d 933, 403 *N. Y. S.* 2d 891, 374 *N. E.* 2d 1242 (1978), commented:

Facile categorization of taxable transactions as "voluntary" or "involuntary" does not progress the analysis. Even property taxes and income taxes involve voluntary acts — the decision to own property or to earn, rather than to forego, income. [43 *N. Y.* 2d at 934, 403 *N. Y. S.* 2d at 891, 374 *N. E.* 2d at 1242]

For example, the Wisconsin taxpayer in *Welch* who in 1933 purchased the stock of a corporation relying upon the assumption that dividends were not taxable discovered two years later that state taxes would have to be paid on that income received in 1933. The justification for the imposition of retroactivity rests on the underlying premise that the cost of government may be properly apportioned among those who enjoy its benefits and that under some circumstances apportionment may warrant retroactivity.

Plaintiff relies primarily upon a series of decisions which invalidated the retroactive effects of estate and gift taxes. *Nichols v. Coolidge*, 274 *U. S.* 531, 47 *S. Ct.* 710, 71 *L. Ed.* 1184 (1927); *Blodgett v. Holden*, 275 *U. S.* 142, 48 *S. Ct.* 105, 72 *L. Ed.* 206 (1927); *Untermyer v. Anderson*, 276 *U. S.* 440, 48 *S. Ct.* 353, 72 *L. Ed.* 645 (1928); *Coolidge v. Long*, 282 *U. S.* 582, 51 *S. Ct.* 306, 75 *L. Ed.* 562 (1931).

In *Nichols v. Coolidge, supra,* an asset transferred by the decedent before the enactment of a tax on the estate was held not to be taxable within the language of the act. The Court also remarked that a different statutory construction would have resulted in a tax beyond the reach of Congress's powers. Four justices concurred in the result. In *Blodgett v. Holden, supra,* an evenly divided Court struck down the retroactive aspect of a federal gift tax. Four justices construed the statute to operate prospectively only and did not express any opinon on the Congressional power to tax gifts made within the calendar year in which the tax became effective.

The same gift tax law came before the Court the following year in *Untermyer v. Anderson, supra.* The gifts had been made on May 23, 1924, the day after the conference report on the bill had been sent to the Senate. On May 25, the bill passed both houses and the President signed it on June 2, 1924. A five-man majority concluded the tax was invalid under the due process clause of the Fifth Amendment. Mr. Justice Brandeis in a strongly worded dissent made the following cogent comments:

For more than half a century, it has been settled that a law of Congress imposing a tax may be retroactive in its operation. * * * Each of the fifteen income tax acts adopted from time to time during the last sixty-seven years has been retroactive, in that it applied to income earned, prior to the passage of the act, during the calendar year.

\* \* \*

The need of the government for revenue has hitherto been deemed a sufficient justification for making a tax measure retroactive whenever the imposition seemed consonant with justice and the conditions were not such as would ordinarily involve hardship. On this broad ground rest the cases in which a special assessment upon real estate has been upheld although the benefit resulting from the improvement had been enjoyed and the cost thereof had been paid prior to any legislation attempting to authorize the assessment, * * * also the cases in which special assessments upon real estate have been upheld although the benefit had been conferred and the cost thereof had been paid before there was a valid authorization either of the improvement or of the assessment. * * * Such retroactive legislation has been sustained, although the validating statute was not enacted until after the property benefited had passed to a bona fide purchaser without notice of any claim that it had been, or might be, assessed for a benefit. [276 *U. S.* at 447–450, 48 *S. Ct.* at 355–356, 72 *L. Ed.* at 648–649; citations omitted]

In *Coolidge v. Long, supra,* the Supreme Court again divided 5–4, the majority holding that a trust executed in 1907 (the same trust that was before the Court in *Blodgett v. Holden, supra*) was not subject to a Massachusetts transfer inheritance tax enacted at a later date.

*Welch v. Henry, supra,* decided seven years after *Coolidge v. Long, supra,* attempted to justify the difference in treatment between income tax laws and gift or estate tax statutes.[3]

---

[3]The continuing vitality of the estate and gift tax cases has been questioned. The conclusion of two commentators was that

[t]he Court has been unwilling to carry its concept of "arbitrary retroactivity" beyond the estate and gift tax fields, and there is a good deal of doubt today whether even within these fields retroactivity may not be as permissible as it is in the income tax area. [Novick & Petersberger, "Retroactivity in Federal Taxation," 37 *Taxes* 407, 425 (1959)]

Though some language in the opinion refers to the voluntary-involuntary dichotomy, in the final analysis the linchpin of that opinion rests upon the principle that

[i]n each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation. [305 *U. S.* at 147, 59 *S. Ct.* at 126, 83 *L. Ed.* at 93]

The Supreme Court's consistent treatment of income acquired during relatively short periods preceding enactment of a law subjecting that income to tax liability to meet the needs of government supports the notion that such retroactivity is not constitutionally infirm.

When New Jersey enacted the Tax on Capital Gains, the State was, as the Appellate Division aptly remarked, "in the throes of a fiscal crisis" in attempting to meet the mandate of *Robinson v. Cahill,* 63 *N. J.* 196 (1973). Upon signing the bill Governor Byrne stated that "[t]hese revenues will keep the buses and trains in operation and will restore the other programs that a majority of the Legislature adjudged to be vital to the public welfare." He added that "[f]or the most part, the burden falls most heavily on segments of the economy that are able to bear that additional burden. And one of them—the capital gains or unearned income tax—is truly progressive." He noted further that the revenue to be derived was "strictly a stopgap revenue program" and that the increased commitment to fund the new education formula plus "other fiscal facts of life, increase the already inevitable need for substantial new

Similarly, Judge Friendly, in upholding the ordinary income tax amendment of September 23, 1950 (26 *U. S. C. A.* § 117(m)) applicable to gains realized after December 31, 1949, rejected the taxpayer's rationale grounded upon *Untermyer v. Anderson. Sidney v. Comm'r,* 273 *F.* 2d 928 (2d Cir. 1960). He noted that the Supreme Court had distinguished the case on six occasions and expressly followed it only once. He concluded that "[i]f *Untermyer* remains authority at all, it is so only for the particular situation of a wholly new type of tax there under consideration." 273 *F.* 2d at 932.

revenues next year." Statement by Governor Byrne, August 4, 1975. In this manner retroactivity enabled the Legislature "to distribute increased costs of government among its taxpayers in the light of present need for revenue and with knowledge of the sources and amounts of the various classes of taxable income during the taxable period preceding revision." *Welch v. Henry, supra,* 305 *U. S.* at 149, 59 *S. Ct.* at 127, 83 *L. Ed.* at 94.

We agree with the Appellate Division that under the situation then existent the plaintiff should have been aware that serious consideration was being given to some form of income tax long before the sale of his stock. One observer, after reviewing some of the many bills introduced in the Legislature, commented that:

Clearly, New Jersey taxpayers were given more than reasonable notice as to the potential for a tax on capital gains long prior to January 1, 1975, effective date of the Act. [*M. Deitz, New Jersey's "Tax on Capital Gains and Other Unearned Income Tax Act" and Other Tax Legislation of 1975* at 13 (undated)]

We are satisfied that under the totality of circumstances and events existing here—the paramount governmental interest in obtaining adequate revenues, the extensive fiscal implications for the State in a financial crunch, apportionment of the costs of government equitably, the public controversy and numerous income tax bills which had been introduced in the Legislature subsequent to the decision in *Robinson v. Cahill, supra*—the limited retroactive effect of the statute does not violate the Fourteenth Amendment of the Federal Constitution. We see no reason to reach a different conclusion in interpreting the comparable provision of the New Jersey Constitution (1947), Art. I, par. 1.

The judgment is affirmed.

*For affirmance*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For reversal*—None.