LASSER, P. J. T. C.
This case involves cross-motions for summary judgment with respect to a 1977 tax deficiency assessment imposed by the Director of the Division of Taxation under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq. At issue is the taxability of a deferred compensation installment payment received after July 1, 1976, the effective date of the act, by taxpayer Stanley Smoyer who had retired prior to the effective date of the act.
The following facts are not in dispute and have been stipulated. Taxpayer was an employee of Johnson & Johnson, a New Jersey corporation. During his employment he participated in the company’s deferred compensation program. The purpose of this program was to reward past services and provide incentive for future performance. As a participant in the program, taxpayer received certificates of extra compensation, also described as shadow or phantom stock. Each certificate consisted of a number of share units which comprised the deferred compensation base. The value of each share unit was measured by the asset value and earning power of one share of common stock of the company. The base was subject to adjustment during taxpayer’s employment for any change in the capital structure of the company. At the time of taxpayer’s retirement, the adjusted compensation base was valued by the board of directors based on a formula in the certificate. Payments were made to taxpayer on an installment basis, beginning after retirement. The rights and benefits represented by the certificates were nonassignable. All conditions precedent to payment had been complied with prior to July 1, 1976, and taxpayer retired before the effective date of the act.
Taxpayer filed a 1977 New Jersey gross income tax return but did not include in that return the installment payment of deferred compensation received in 1977. However, this amount was included in the taxpayer’s 1977 federal income tax return. Following an audit, the Director of the Division of Taxation *45 imposed a deficiency assessment taxing the deferred compensation installment payment received in 1977.
The effective date of the gross income tax, as provided in N.J.S.A. 54A:9-27(a), is as follows:
This act shall take effect immediately and shall be applicable with respect to items of income, deduction, loss or gain occurring in taxable years ending on or after July 1, 1976, but only to the extent such items have been earned, or incurred on or after July 1, 1976.
Taxpayer contends that the deferred compensation payments were earned during his years of employment with the company, before the act’s July 1, 1976 effective date. He also contends that the word “earned,” as used in N.J.S.A. 54A:9-27(a), must be distinguished from the word “received.” Taxpayer supports his interpretation of the word “earned” by reference to prior drafts of this section of the act which used the combined words “earned or received.” Taxpayer argues that by deleting the word “received” in the final version, the Legislature consciously decided that income earned prior to July 1, 1976, but received thereafter, would not be taxable under the act.
Taxpayer cites cases from other jurisdictions which indicate that “earned” and “received” are different concepts. Adams v. Burts, 245 S.C. 339, 140 S.E.2d 586 (Sup.Ct.1965); Wackerman v. State, 47 Mich.App. 228, 209 N.W.2d 493 (Ct.App.1973); Hunt v. South Carolina Tax Comm’n, 249 S.C. 147, 153 S.E.2d 321 (Sup.Ct.1967). Taxpayer also cites a dictionary definition which states that “to earn” is “to gain or deserve.” American Heritage Dictionary of the English Language 224 (1976).
Taxpayer also argues that the Director’s assessment unconstitutionally violates his federal and state due process rights because it retroactively taxes income earned before July 1, 1976.
The Director contends that the primary dictionary definition of “earn” is “to receive.” Webster’s Third New International Dictionary (1971). He contends that income is taxed only when it is realized, not when the right to receive it arises. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920); Shangri-la v. State, 113 N.H. 440, 309 A.2d 285 (Sup.Ct.1973); Dery v. Lindley, 57 Oh.St.2d 5, 385 N.E.2d 291 (Sup.Ct.1979). *46 Since taxpayer uses the cash and disbursements accounting method, the Director argues that the income is taxable upon receipt. Treas.Reg. § 1.446-l(c)(l)(i).
. The Director urges that there is no retroactive application of the act since the act does not tax income received prior to its effective date but rather, using accepted federal accounting principles, taxes income when realized and received. Katzenberg v. Comptroller, 263 Md. 189, 282 A.2d 465 (Ct.App.1971); Shangri-la v. State, 113 N.H. 440, 309 A.2d 285 (Sup.Ct.1973).
I
The New Jersey Gross Income Tax Act requires use of federal accounting methods in reporting income. N.J.S.A. 54A:8-3(c) provides that “[A] taxpayer’s accounting method under this act shall be the same as his accounting method for federal income tax purposes.” Under federal income tax accounting methods, a cash basis taxpayer reports income in the year in which it is received. I.R.C. § 451(a). Receipt may be actual or constructive. Treas.Reg. 1.451-l(a) (1957); 1.446-l(c)(l)(i) (1957). The deferred compensation payment in question was not actually received until after the July 1, 1976 effective date of the act. Can the payment be deemed to have been constructively received prior to July 1, 1976?
A taxpayer constructively receives income when cash or property is credited to his account or is made available for withdrawal, on the giving of proper notice, and is not subject to substantial limitations or restrictions. Treas.Reg. 1.451-2(2) (1957). In this case taxpayer received the 1977 payment after retirement, pursuant to the deferred compensation program. Prior to actually receiving payment, taxpayer had no right to receive or assign any sums represented by the deferred compensation certificates and had no right to transfer or negotiate these certificates. During his years of employment, taxpayer held certificates evidencing the company’s obligation to pay an indefinite sum which would be valued upon retirement. Because the certificates were nonnegotiable and nonassignable, they had no discountable value at the time they were given to *47 taxpayer, and could only be valued and redeemed on retirement. Even after retirement, taxpayer had no right to demand payment of the deferred compensation except in accordance with the installment payment program. The installment payment schedule selected by the employer could not be altered or modified by taxpayer. There is no evidence that after retirement these payments could be assigned or discounted by taxpayer. Taxpayer stated that the 1977 installment payment was reported for federal income tax purposes on his 1977 income tax return, 1977 being the year “in which said items are actually or constructively received.” Letter of taxpayer’s attorney dated October 14, 1981. Thus, taxpayer did not constructively receive the 1977 installment prior to July 1, 1976 because prior to this date his rights were subject to substantial limitations and restrictions. Treas.Reg. 1.451-2(a) (1957); Rev. Ruling 60 -31.
Using the federal accounting method, a cash basis taxpayer reports income when received or constructively received. Treas. Reg. 1.446-l(c)(l)(i) (1957). In contrast, an accrual method taxpayer realizes income when his right to that income becomes fixed and determinable, even though payment is not received or constructively received until some later date.
The requirement that federal accounting methods be used for New Jersey gross income tax purposes leads to the conclusion, in the case of a cash basis taxpayer, that the word “earned” as used in N.J.S.A. 54A:9-27(a) means “received” or “constructively received.” McMenamy v. Taxation Div. Director, 3 N.J.Tax 356 (Tax Ct.1981). The federal accounting method provision pervades the entire act. There is nothing in N.J.S.A. 54A:9-27(a) to indicate that federal accounting methods are not to apply to the effective date provision. Defining “earned” in this manner achieves the practical benefits attendant to having taxpayers report income in a consistent manner on their state and federal income tax returns. If we were to hold that for a cash basis taxpayer “earned” means “entitled to receive” or “accrued,” as taxpayer argues, we would be treating cash basis taxpayers on the accrual basis, contrary to N.J.S.A. 54A:8-3(c).
*48 Dictionary definitions support the interpretation that, for a cash basis taxpayer, “earned” includes “received.” According to Webster’s New Collegiate Dictionary (1979) and Webster’s Third New International Dictionary (1971), the preferred definition of the word “earn” is “to receive as equitable return for work done or services rendered.”
Our holding is consistent with Wackerman v. State, 47 Mich. App. 228, 209 N.W.2d 493 (Ct.App.1973). In Wackerman the Michigan court dealt with the question of taxability of bonus payments received by a cash basis taxpayer after the effective date of the Michigan Tax Act. The act became effective on October 1, 1967 and taxed income received, earned or otherwise acquired from any source after that date. Id. at 494-495. In January and March 1968 taxpayer received bonus payments from General Motors Corporation for compensation sums that accrued before October 1, 1967. The Michigan Tax Act used the word “received”, but even if this word had been omitted the result would had to have been the same because the decision was based on the actual or constructive receipt concept. In holding the income taxable, the court stated:
It is axiomatic that, for a cash basis taxpayer, income is realized, and hence taxable, when actually or constructively received. See § 451 of the Internal Revenue Code of 1954, 26 U.S.G.A. § 451. The bonus installment payments were admittedly received in January of 1968 and hence taxable at that time, regardless of when they were earned or accrued. [209 N.W.2d at 496]
Our holding is consistent with Shangri-la, Inc. v. State, 113 N.H. 440, 309 A.2d 285 (Sup.Ct.1973). Shangri-la dealt with the New Hampshire tax on business profits “earned” after January 1, 1970. Taxpayers purchased a resort business in 1952 and sold it in April 1970, after the effective date of the statute. The issue in that case concerned the computation of the gain on the sale of the property, which had substantially appreciated in value before 1970. Taxpayers contended that the legislature did not intend to tax appreciation occurring before January 1, 1970 and that their basis should be the fair market value as of the effective date of the act, without considering pre-enactment appreciation as an adjustment to basis. The court held that the gain was to be computed using taxpayer’s federal income tax method, which the New Hampshire business profits tax adopted. *49 In construing the effective date provision of the act, the court stated:
.. [A]n asset’s unrealized appreciation does not tecome income for income tax purposes until the taxpayer realizes a profit through a sale or other transaction, Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 529 (1920). Unrealized appreciation by itself is never a separate taxable entity that can be “earned”, . . . the Legislature intended “earned” to refer in this income tax context to the income creating event of profit realization and not to the nonincome-creating event of unrealized appreciation. [309 A.2d at 287.]
Taxpayer cites Adams v. Burts, 245 S.C. 339, 140 S.E.2d 586 (Sup.Ct.1965), to indicate that the 1977 payments are nontaxable under the act. Taxpayer in Adams sought capital gains treatment for payments received in 1960, 1961 and 1962 under an installment sale contract for the sale of land in 1958. Adams dealt with a South Carolina Income Tax Act amendment effective as to income “earned on or after January 1, 1960,” which allowed a deduction from gross income of one-half the gains and losses from the sale or exchange of capital assets. [140 S.E. at 588.]
That court held that taxpayer was not entitled to favored capital gains treatment because the transaction was completed in 1958 when all events necessary to establish the liability of the parties became “fixed and determined.” Id. at 590. At the time the contract was entered into in 1958, South Carolina did not permit deferred reporting of payments under an installment sales contract.[1] Under the facts of Adams it appears that the South Carolina court held the purchase price to be either actually or constructively received in 1958 before the effective date of the amendment to the South Carolina Income Tax Act.
Taxpayer seeks to apply the Adams rationale to the subject case. However, Adams was decided in an installment sales context, holding the transaction to be complete at the time the agreement was consummated. Payments under an installment sale contract are assignable, discountable and marketable, unlike the subject deferred compensation payments. The deferred compensation transaction in the subject case was not completed *50 until the payments were received since we have held above that there was no actual or constructive receipt until that time.
Taxpayer erroneously compares Adams, in which it appears that there was either actual or constructive receipt of payments prior to the effective date of the amendment, to the present case, in which there was no actual or constructive receipt prior to the effective date of the act. The analysis of the Adams court is inapplicable to the facts of the subject case.
Under the facts of this case, deferred compensation payments which are not assignable, discountable or marketable prior to receipt are subject to New Jersey gross income tax upon actual receipt after the effective date of the act. In this case a cash basis taxpayer is not deemed to have earned the deferred compensation until actually or constructively received, which actual or constructive receipt did not occur until the receipt of the payment after the effective date of the act.
II
Taxpayer alleges that the tax imposed by the Director has been retroactively applied and therefore violates state and federal due process requirements under U.S.Const., Amend. XIV, and N.J.Const. (1947), Art. I, par. 1. The Director responds by citing such cases as Klebanow v. Glaser, 80 N.J. 367, 403 A.2d 897 (1979), and Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87 (1938), which upheld retroactive application of statutes that taxed income received before the effective dates of the taxing acts.
If the New Jersey Gross Income Tax Act was being retroactively applied, these cases would be relevant. However, we need not reach that question since there is no retroactive application of the statute in this case. We have held that the word “earned,” in the context of N.J.S.A. 54A:9-27(a), includes “received” or “constructively received” and that this interpretation reaches a result that is consistent with federal accounting methods. In Welch and Klebanow the statutes taxed income re *51 ceived before the respective acts became effective, thus raising the issue of retroactivity. In the subject case taxpayer is being taxed on a payment which was received after the act became effective and, therefore, the statute is not being retroactively applied to him. Income is taxed when it is realized. Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75 (1940); Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920). In the subject case the realization event occurred in 1977 when the payment was received. There is therefore no constitutional infirmity in subjecting the 1977 payment to the act.
Taxpayer’s motion is denied. The Director’s motion is granted. The Clerk of the Tax Court is directed to enter judgment in accordance with this opinion.

Deferred reporting of installment payments was not permitted until the act was amended in 1961. Id. 140 S.E. at 588.