KUSKIN, J.T.C.
Plaintiffs appeal an assessment of New Jersey estate tax imposed by defendant, Director of the New Jersey Division of Taxation (the “Director”). The assessment, in the amount of $32,600 plus interest, resulted from the disclaimer by plaintiff David A Rappeport (“Mr. Rappeport”) of a bequest from his deceased wife, Lorraine K. Rappeport (“Mrs. Rappeport”) and the retroactive application to the disclaimed bequest of amendments to N.J.S.A. 54:38-1 (which, together with N.J.S.A. 54:38-2 to-16 imposes New Jersey estate tax). The amendments were enacted on July 1, 2002, approximately one month after the date of the disclaimer and, under their express provisions, were applicable as of January 1,2002.
The matter was submitted for decision based on stipulated facts, the certifications of counsel for the Director, and the briefs and oral arguments of both counsel. For the reasons set forth below, I hold that Mrs. Rappeport’s estate is liable for the New Jersey estate tax assessed, plus interest.
The relevant factual background is as follows. Mrs. Rappeport died testate on February 23, 2002. Her Will was admitted to probate, and her husband, plaintiff David A. Rappeport, and her daughter, plaintiff Martha A. Woods, qualified as co-executors and trustees of the estate. The Will created a trust for the benefit of Mr. Rappeport, having a principal amount defined as follows:
[A] sum equal to the largest amount, if any, that can pass free of federal estate tax upon my death by reason of the unified credit and the state death tax credit (but no other credits) reduced by (i) all other devises under this Will and any property passing outside of this Will and included in my gross estate for federal estate tax purposes for which no marital deduction was allowed, and (ii) all expenses paid from principal that are not deducted in computing my federal estate tax.
All trust income was payable to Mr. Rappeport, and he had the right to receive annually, upon request, the greater of $5,000 or five percent of the then value of the trust principal. In addition, Ms. Woods, in her capacity as trustee, had discretion to distribute additional amounts of principal to Mr. Rappeport for his “support, maintenance, needs, medical, hospital and nursing home care.” *424 Upon Mr. Rappeport’s death, the remaining principal of the trust would pass to Ms. Woods.
On June 3, 2002, Mr. Rappeport executed a disclaimer in which he did “freely, voluntarily, unqualifiedly and for no consideration disclaim, renounce, relinquish, surrender and release” his interest in the income and principal of the trust to the extent of $904,000. As a result of the disclaimer, estate assets intended by Mrs. Rappeport for distribution to her testamentary trust were distributed to her daughter, Ms. Woods.
As of the date Mr. Rappeport executed the disclaimer, the relevant New Jersey and federal statutes provided as follows: (1) N.J.S.A. 54:38-1, the statute setting forth the calculation of estate tax, provided that the amount of tax equaled “the sum by which the maximum credit allowable against any federal estate tax payable to the United States under any federal revenue act on account of taxes paid to any state ... shall exceed the aggregate amount of all estate, inheritance, succession or legacy taxes actually paid to any state ..., including [New Jersey]____” N.J.S.A. 54:38-1(a)(1); (2) I.R.C. § 2010 allowed a credit against federal estate tax in an amount equal to the taxes payable for a specified exclusion amount; and (3) I.R.C. § 2011 set forth the maximum credit against federal estate tax allowable for death taxes paid to a state or states. On the date of the disclaimer, the exclusion amount under I.R.C. § 2010 for 2002 was $1,000,000, and, therefore, no federal estate tax would have been due with respect to the distribution to Ms. Woods pursuant to the disclaimer. Consequently, the credit against federal estate tax for state death taxes under I.R.C. § 2011 would not have applied, and no New Jersey estate tax would have been due.
The $1,000,000 exclusion amount provided in I.R.C. § 2010 resulted from the enactment by the United States Congress on May 26, 2001 of the Economic Growth and Tax Relief Reconciliation Act of 2001, Pub.L. No. 107-16 (2001), which amended the federal estate tax laws in two respects significant to this matter. The first was to increase the exclusion amount for 2002 from $700,000 to $1,000,000, and the second was to phase out, in increments of 25% per year starting in 2002, the state death tax *425 credit contained in I.R.C. § 2011. Pub.L. No. 107-16 at § 531(a)(3).
These changes in the federal estate tax laws produced concern in New Jersey about the potential loss of estate tax revenue, and provoked a legislative response in the form of Senate Bill 1378, introduced on March 25, 2002. This Bill sought to preclude any loss of New Jersey estate tax revenue resulting from the changes in federal law. An alternate version of the Bill was enacted on July 1, 2002 as L. 2002, c. 31, § 1. The history of this legislation is set forth in full in my opinion in Oberhand v. Director, Division of Taxation, 22 N.J.Tax 55, 60-62 (2005), appeal docketed, No. A3886-04T2 (App. Div. April 8, 2005). The legislation contained major amendments (the “Amendments”) to N.J.S.A. 54:38-1 that insulated the New Jersey estate tax from changes in the federal estate tax law by providing for imposition of New Jersey estate tax based on the federal estate tax law in effect as of December 31, 2001. Although enacted on July 1, 2002, the Amendments were applicable to any “transfer of the estate of every resident decedent dying after December 31, 2001.” N.J.S.A. 54:38-1(a)(2)(a). This retroactive application was the basis for defendant’s assessment of New Jersey estate tax against the Rappeport estate as a result of Mr. Rappeport’s June 3, 2002 disclaimer.
For purposes of this opinion I assume that, upon appropriate application to the Internal Revenue Service, the trust for the benefit of Mr. Rappeport could have qualified for the marital deduction under I.R.C. § 2056. The disclaimer amount then could have been limited to $675,000, as to which no federal estate tax would have been payable based on the allowable federal exclusion amount, and the $229,000 balance of the $904,000 bequest to the trust for the benefit of Mr. Rappeport could have passed to the trust without any federal estate tax liability based on the marital deduction. Under this scenario, no New Jersey estate tax would have been due. At the time of enactment of the Amendments, Mr. Rappeport had signed the disclaimer as to the entire $904,000, and the estate could no longer use the foregoing methodology in order to avoid both federal and New Jersey estate tax. Plaintiffs contend that, under these circumstances, applying the Amendments retroactively is manifestly unjust.
*426 As explained in Oberhand, supra, 22 N.J. Tax at 68, manifest injustice is an equitable doctrine which can apply to prevent retroactive application of a statute even if such application satisfies all constitutional requirements. In Oberhand, I held that retroactive application of the Amendments was manifestly unjust because the public interest in retroactive application was outweighed by the unfairness of imposing estate tax under circumstances where the decedent had no warning of the adoption of the Amendments and no opportunity to revise her estate plan in response to the Amendments. Here, the claim of manifest injustice, although asserted on behalf of Mrs. Rappeport’s estate, relates to actions not by her as testator, but by a beneficiary, Mr. Rappeport, who elected a disposition of the estate assets different from that set forth in his wife’s Will.
I conclude that, for purposes of a manifest injustice analysis, the disclaimer by Mr. Rappeport is distinguishable from the estate planning by Mrs. Oberhand, and, as a result, imposition of New Jersey estate tax on the distribution resulting from the disclaimer does not rise to the level of unfairness that occurred under the facts in Oberhand.
One distinction between the Oberhand and Rappeport situations relates to the nature of the financial planning involved. Mrs. Oberhand had engaged in careful estate planning, and her Will expressly set forth her desire to avoid estate taxes. The decision by Mr. Rappeport to disclaim the bequest to him may or may not have been a form of his estate planning (not his deceased wife’s estate planning), and his motivation for the disclaimer, particularly the role of tax considerations, is not revealed in the disclaimer document or in any other submission by the parties. Although Mr. Rappeport was ninety-two years of age at the time of the disclaimer, his motivation may have been simply to accelerate the distribution of money to his daughter because she had an immediate need for it, regardless of the tax consequences, or he may have concluded that the disclaimer would produce savings in the amount of federal estate tax likely to be imposed on his estate that far outweighed any New Jersey estate tax liability. At the date of *427 the disclaimer, the inclusion of an additional $904,000 in Mr. Rappeport’s estate could have resulted in additional federal estate taxes imposed at a rate of 39% or higher, I.R.C. § 2001(c)(1), but New Jersey estate taxes on the entire amount, resulting from the disclaimer, would be calculated at a rate not exceeding 5.6%, based on the rate schedule used to determine the maximum credit for state death taxes under I.R.C. § 2011(b)(1).
A second distinction relates to the opportunity to act or react in light of potential legislative action. At the time of his disclaimer, Mr. Rappeport had the opportunity to investigate possible changes in the law and the opportunity to wait before disclaiming his interest under the trust. The New Jersey estate tax return was not due until November 2002, nine months after Mrs. Rappeport’s date of death, N.J.S.A. 54:38-5, and both the applicable New Jersey estate tax statute then in effect and the applicable federal estate tax statute permitted disclaimers up to nine months after a decedent’s date of death. N.J.S.A. 3B:9-5[1]; I.R.C. § 2518(b)(2). On June 3, 2002, the date of the disclaimer, inquiry by the attorneys who apparently prepared the disclaimer document would have disclosed the pendency of Senate Bill 1368 and the similar Bill introduced in the Assembly on May 9, 2002 as Assembly Bill No. 2302, and may have led to a deferral of the election to disclaim while the legislation was pending or a decision not to disclaim. Cf., Klebanow v. Glaser, 80 N.J. 367, 403 A.2d 897 (1979) (suggesting that, in determining whether retroactive application of a tax statute violates the Due Process Clause, a court should treat a taxpayer as having constructive notice of legislation introduced four months before he moved to New Jersey and six months before he sold stock in reliance on existing law), and Edgewater Inv. Assocs. v. Edgewater Bor., 103 N.J. 227, 240-41, 510 A.2d 1178 (1986) (rejecting a claim of manifest injustice relating to retroactive application of a statute providing protections for senior citizens and disabled tenants in condominium *428 conversions, noting that the principals of the plaintiff were “professional investors acting in a heavily-regulated field at a time when further regulation was being publicly debated”). These opportunities for investigation and planning were not available to Mrs. Oberhand. The tax implications of her Will were fixed as of her date of death, and she died a mere three days after introduction of Senate Bill 1378.
Under these circumstances, the unfairness of retroactive application of the Amendments does not outweigh the public interest in retroactive application. As explained in Oberhand, supra, 22 N.J. Tax at 59-62 and 66-67, the public interest relates to the preservation of revenue that might be lost as a result of the changes in the federal estate tax law. Therefore, I conclude that it would not be manifestly unjust to apply the Amendments retroactively so as to impose New Jersey estate tax here.
Judgment will be entered in favor of the Director for taxes of $32,600 together with interest.

This statute was repealed by L. 2004, c. 132, § 94 (enacted on August 31, 2004 and effective 180 days thereafter), and its provisions as to the time limit for disclaimers were replaced by NJ.S.A. 3B:9-4.2 which contains no specific time limit.