907 A.2d 428

ROBERT OBERHAND, AS EXECUTOR OF THE ESTATE OF CYN-
THIA A. OBERHAND, PLAINTIFF–RESPONDENT, v. DI-
RECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE
TREASURY, DIVISION OF TAXATION, DEFENDANT–APPEL-
LANT.

HARRIET SEIDNER, AS EXECUTRIX OF THE ESTATE OF EU-
GENE M. SEIDNER, PLAINTIFF–RESPONDENT, v. DI-
RECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE
TREASURY, DIVISION OF TAXATION, DEFENDANT–APPEL-
LANT.

Superior Court of New Jersey
Appellate Division

Argued September 12, 2006—Decided September 29, 2006.

240

Before Judges COBURN, AXELRAD and R.B. COLEMAN.

*Mala Narayanan,* Deputy Attorney General, argued the cause for both appellants, Director, Division of Taxation (*Anne Milgram,* Acting Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Mr. DeAlmeida* and *Ms. Narayanan,* on the briefs).

*Andrew M. Epstein,* argued the cause for respondents Robert Oberhand and Harriet Seidner (*Lampf, Lipkind, Prupis & Petigrow,* attorneys; *Mr. Epstein,* on the brief).

The opinion of the court was delivered by

COBURN, P.J.A.D.

In June 2001, the United States Congress increased the amount of property that could pass free of federal estate taxation and eliminated the state death tax credit. To preserve revenue that would otherwise be lost because of the changes in federal law, the New Jersey Legislature amended its estate tax law in July 2002, making the changes retroactive to January 1, 2002. Consequently, the estates with which we are concerned became obliged to pay estate taxes that would not have been due if the Legislature had not made the amendment retroactive. The issues to be resolved are the meaning and validity of the retroactive aspect of the New Jersey law.

These cases were decided by the Tax Court on cross-motions for summary judgment, and there are no issues of fact. Eugene M. Seidner and Cynthia Oberhand executed their wills in the 1990's. Seidner died on January 25, 2002, leaving a taxable estate of $744,251.89, and Oberhand died on March 28, 2002, leaving a taxable estate of $864,905.98. To avoid federal and state estate taxes, both wills contained two legal and widely-used provisions: a marital trust and a family trust. In essence, the family trust was to be funded with the maximum sum not subject to federal estate tax, and the marital trust would receive the rest, with the result that no taxes would be due to either government. The funding is

expressed, not in dollar amounts, but in somewhat complex formulas that we need not detail.

In 2003, the Director of the Division of Taxation issued timely estate tax assessments of $25,915.49 against the estate of Cynthia Oberhand and $90,000 against the estate of Eugene M. Seidner. The estates filed complaints challenging the assessments. The Tax Court held in each case that the Legislature intended the law to apply retroactively to the estate, that its retroactive application did not violate substantive due process, but that the assessments had to be vacated because they were manifestly unjust. *Oberhand v. Dir., Div. of Taxation*, 22 *N.J.Tax* 55 (2005). *Seidner* was decided by a short letter opinion relying on *Oberhand*.

The Director filed appeals, which we now consolidate for purposes of this opinion, seeking reinstatement of the assessments. He argues that the equitable doctrine of manifest injustice is inapplicable to tax statutes. Alternatively, he argues that the estates have not shown that injustice would result from retroactive application of the statute.

The estates contend that the Tax Court erred in its interpretation of the retroactive aspect of the statute. While admitting that the statute is retroactive in general, they say it does not apply to estates that would have paid no tax if the death had occurred on or before December 31, 2001. Alternatively, they rely on the doctrine of manifest injustice, claiming that it is applicable in tax cases and warrants relief here. Although we agree with the Tax Court's construction of the statute and its rejection of the constitutional challenge, we reverse the judgments because we do not believe that the doctrine of manifest injustice is applicable in tax cases.

On June 7, 2001, the Congress enacted sweeping changes in the federal estate tax laws, which included increasing the amount that could be transferred free of federal tax under 26 *U.S.C.A.* § 2010(c) from $675,000 in 2001 to $1 million for decedents dying in 2002 and 2003, with further increases in subsequent years, *Pub.L. No.* 107–16, § 521(a), 115 *Stat.* 38, 71 (2001), and a phase-

out over four years beginning in 2002 of the state death tax credit contained in 26 *U.S.C.A.* § 2011(b), *Pub.L. No.* 107–16, § 531(a)(3), 115 *Stat.* 38, 72–73 (2001).

The Tax Court noted that "[a]s a result of these changes in the federal estate tax law, concern arose in New Jersey as to the potential loss of estate tax revenue." *Oberhand, supra,* 22 *N.J. Tax* at 60. Legislation was introduced on March 25, 2002, and the statute was enacted on July 1, 2002. *L.* 2002, *c.* 31, § 1. This law imposed an estate or transfer tax

[u]pon the transfer of the estate of every resident decedent dying after December 31, 2001 which would have been subject to an estate tax payable to the United States under the provisions of the federal Internal Revenue Code of 1986 ... in effect on December 31, 2001 ....

[*N.J.S.A.* 54:38–1(a)(2)(a).]

The Tax Court quoted the Legislature's reasons for adopting this statute as set forth in Statements to the bills in both houses. *Oberhand, supra,* 22 *N.J.Tax* at 60, 61–62. In short, the purpose was to preserve the New Jersey estate tax as it existed just before the changes in federal law took effect. *Id.* at 60. The Legislature adopted that course, in part, because without the change the State faced losing revenues estimated to be $60 million in fiscal year 2003, $120 million in 2004, $180 million in 2005, and $240 million in 2006 and each year thereafter. *Id.* at 61.

New Jersey's legislative response to the dramatic changes in federal law leaves no room for the statutory interpretation offered by the estates, and on this point we affirm substantially for the cogent reasons expressed by the Tax Court, *see id.* at 62–65, with these additional comments.

Here the express language of the statute, *N.J.S.A.* 54:38–1(a)(2)(a), is clear: the estate of anyone dying after December 31, 2001 is subject to the tax if the estate "would have been subject to" federal estate tax under the law "in effect on December 31, 2001 ...." The estates concede, as the Tax Court concluded, that on December 31, 2001, any assets in excess of $675,000 transferred to the type of family trust employed here would have been subject to federal estate tax. Since, as drafted, both wills transfer more

than $675,000 to a family trust, the excess is subject to the New Jersey tax if the Legislature so intended and if retroactivity is legal in this context.

The estates' inappropriately rely on the principle that when the "interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer." *Fedders Fin. Corp. v. Dir., Div. of Taxation,* 96 *N.J.* 376, 385, 476 *A.*2d 741 (1984). But here we have no doubt about what the statute means and the legislative history strongly supports enforcement of its express language. In essence, the estates are really seeking an exemption from a taxing statute, and in that circumstance, the governing principle is that "the probable legislative intent is one of inclusion and exemptions are to be construed narrowly." *Id.* at 386, 476 *A.*2d 741. But we need not resort to that principle because the statutory language and legislative history leave no doubt as to the law's meaning.

The Tax Court properly interpreted the statute and legislative Statements as indicating that the transactions should be taxed as they occurred. That approach was dictated by a fundamental principle of tax law expressed by the United States Supreme Court and endorsed by the State Supreme Court in *General Trading Co. v. Director, Division of Taxation,* 83 *N.J.* 122, 416 *A.*2d 37 (1980):

"This Court has observed repeatedly that, while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not . . ., and may not enjoy the benefit of some other route he might have chosen to follow but did not. 'To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty.' "

[*General Trading, supra,* 83 *N.J.* at 136–37, 416 *A.*2d 37 (quoting *Comm'r. v. Nat'l Alfalfa Dehydrating and Milling Co.,* 417 *U.S.* 134, 149, 94 *S.Ct.* 2129, 2137, 40 *L.Ed.*2d 717, 727 (1974)) (citations omitted).]

Thus, that the decedents' estates would have paid no federal or state estate tax if the decedents had died before December 31, 2001, is simply irrelevant, as is the fact that they might have

drafted or redrafted their wills to avoid taxation caused by future changes in the New Jersey estate tax law.

We agree with the Tax Court's determination that New Jersey's retroactive estate tax does not violate substantive due process as guaranteed by the state and federal constitutions. *See Oberhand, supra,* 22 *N.J.Tax* at 65–67. Although the estates pressed that point below, they have abandoned it on appeal. Consequently, we will limit our reference to the case law on this subject, citing it only to the extent it bears on our rejection of the Tax Court's application in this context of the equitable doctrine of manifest injustice, the subject to which we now turn.

■ If the doctrine were applicable in retroactive-taxation cases, the result would depend on

whether the affected party *relied,* to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively.

[*Gibbons v. Gibbons,* 86 *N.J.* 515, 523–24, 432 *A.2d* 80 (1981) (emphasis added).]

■ The Tax Court assumed that the doctrine of manifest injustice was applicable in retroactive-taxation cases. In fact, there appear to be no federal or state retroactive-taxation cases in which this equitable doctrine was even considered, let alone applied. Although the absence of any case applying the doctrine in a retroactive-taxation case is suggestive of inapplicability, it is not sufficient proof that it is inapplicable. Further analysis is required.

In *Nobrega v. Edison Glen Associates,* 167 *N.J.* 520, 546, 772 *A.2d* 368 (2001), the Court noted it had "applied the manifest injustice analysis sparingly in prior cases, incorporating it to defeat application of a retroactive law only once."

In *Klebanow v. Glaser,* 80 *N.J.* 367, 376, 403 *A.2d* 897 (1979), the Court concluded that "[t]he [United States] Supreme Court's consistent treatment of income acquired during relatively short periods preceding enactment of a law subjecting that income to tax liability to meet the needs of government supports the notion

that such retroactivity is not constitutionally infirm." Consequently, the Court found that the due process provisions of the federal and state constitutions were not violated by retroactive imposition of a newly adopted capital gains tax. *Id.* at 377, 403 *A.*2d 897. The Court reached that conclusion even though the taxpayer had moved from New York to New Jersey before the tax was enacted for the express purpose of avoiding New York's capital gains tax and benefiting from the absence of such a tax in our state. *Id.* at 369, 403 *A.*2d 897.

■ In *United States v. Carlton,* 512 *U.S.* 26, 114 *S.Ct.* 2018, 129 *L.Ed.*2d 22 (1994), the Supreme Court held constitutional a retroactive federal tax statute that eliminated a previously provided deduction on which the decedent had relied, thereby increasing the decedent's estate tax by over $2.5 million. The lower court, focusing exclusively on the taxpayers lack of notice that the tax statute might be retroactively amended and his reliance on the pre-amendment law, held that the retroactive application was "unduly harsh and oppressive and therefore unconstitutional." *Id.* at 30, 114 *S.Ct.* at 2021, 129 *L.Ed.*2d at 28. After noting that it "repeatedly has upheld retroactive tax legislation against a due process challenge," while at times using the " 'harsh and oppressive' formulation," the Court emphasized that that "formulation ... 'does not differ from the prohibition against arbitrary and irrational legislation' that applies generally to enactments in the sphere of economic policy." *Id.* 30, 114 *S.Ct.* at 2021–22, 129 *L.Ed.*2d at 28 (citation omitted). Broadly speaking, the governing principle is that there is no violation of substantive due process if " 'the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means ....' " *Id.* at 30–31, 114 *S.Ct.* at 2022, 129 *L.Ed.*2d at 28 (citation omitted). The Court also observed that protection of unanticipated revenue loss is a legitimate purpose, at least when the legislation is enacted promptly and there is only a modest period of retroactivity. *Id.* at 32, 114 *S.Ct.* at 2023, 129 *L.Ed.*2d at 29.

The Court provided this additional explanation for its rejection of the decedent's reliance on the pre-amendment law:

Although Carlton's reliance is uncontested—and the reading of the original statute on which he relied appears to have been correct—*his reliance alone is insufficient to establish a constitutional violation. Tax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code.*

[*Id.* at 33, 114 *S.Ct.* at 2023, 129 *L.Ed.*2d at 30 (emphasis added).]

Finally, although there may be circumstances in which a wholly new tax could not be made retroactive without violating due process, *id.* at 34, 114 *S.Ct.* at 2023–24, 129 *L.Ed.*2d at 30–31, that concept has no application here since the Legislature's retroactive amendment merely preserved the state's taxation of estate transfers in excess of $675,000.

■ We believe the overarching principle governing this litigation is this: once the concerns of substantive due process have been met by retroactive tax legislation, " 'judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches. . . .' " *Id.* at 31, 114 *S.Ct.* at 2022, 129 *L.Ed.*2d at 28 (citation omitted). That principle was followed by the Court in *Klebanow, supra,* when it sustained a retroactive capital gains tax, with the court noting in particular "the paramount governmental interest in obtaining adequate revenues, the extensive fiscal implications for the State in a financial crunch, apportionment of the costs of government equitably . . . [and] the limited retroactive effect of the statute. . . ." 80 *N.J.* at 377, 403 *A.*2d 897. Although the Court also mentioned the notice to the public that a legislative change was likely, given *Carlton,* which clearly rejected taxpayer reliance as controlling, we do not believe that factor would be deemed critical by the Supreme Court of New Jersey. Imposing the equitable doctrine of manifest injustice in this context merely because the decedents had relied on the prior law would entirely undercut the fundamental principles endorsed by *Carlton* and *Klebanow,* creating uncertainty in the application of the tax law and unduly interfering with the Legislature's right to apportion the burden of the revenue it deems necessary in a manner that it deems equitable. Therefore,

we hold that the doctrine of manifest injustice has no place in the judicial evaluation of retroactive tax laws.

Reversed.