BIANCO, J.T.C.
Defendant, Director, Division of Taxation (“the Director”), and the plaintiff, Estate of Stanley Kosakowski (“the Estate”), filed cross-motions for summary judgment with regard to the Director’s denial of a $109,545 refund claim made by the Estate. This opinion shall serve as the court’s determination of said cross-motions.
The Director asserts that the Estate’s refund claim was properly denied since this matter is distinguishable from Oberhand v. Director, Division of Taxation, and therefore, the doctrine of manifest injustice does not bar the retroactive application of N.J.S.A. 54:38-1 (“the Statute”). 22 N.J.Tax 55 (Tax 2005), rev’d, 388 N.J.Super. 239, 907 A.2d 428 (App.Div.2006), rev’d in part, aff'd in part, 193 N.J. 558, 562, 940 A.2d 1202 (2008).
The Estate contends that Oberhand is controlling and seeks summary judgment ordering the Director to issue the refund. Alternatively, the Estate argues that the constitutional principles of due process and equal protection compel a finding in its favor.
For the reasons set forth herein, the Director’s motion for summary judgment is granted, and the Estate’s cross-motion is denied.

*26
FACTUAL BACKGROUND

The pertinent facts are undisputed. In 2001, the United States Congress passed the Economic Growth and Tax Relief Reconciliation Act (“EGTRR”). Oberhand, supra, 22 N.J.Tax at 59-60; See 107 P.L. 16,115 Stat. 38 (2001). EGTRR, which became effective January 1, 2002, increased the amount that could “pass free of federal estate tax ... [and] phase[d] out the state death tax credit, the source of New Jersey estate tax revenue.” Oberhand, supra, 193 N.J. at 562, 940 A.2d 1202. EGTRR increased the amount that could pass free under the federal unified credit “from $675,000 to $1,000,000.” Id. at 564, 940 A.2d 1202; See I.R.C. 2010.
At the time that Congress passed EGTRR, New Jersey estate tax was coupled with federal law. Oberhand, supra, 193 N.J. at 573-74, 940 A.2d 1202. Therefore, changes pursuant to EGTRR “had a direct impact on the revenue that New Jersey would receive....” Id. at 564, 940 A.2d 1202. According to the New Jersey Assembly Budget and Senate Budget and Appropriations Committees (“the Committees”), in fiscal year (“FY’) 2001, “estate tax revenues constituted approximately forty-five percent of total annual inheritance tax collections” with “approximately $225 million ... attributed to the New Jersey estate tax” for FY 2002. Oberhand, supra, 22 N.J.Tax at 61-62 (quoting Assembly Budget Committee, Statement to Assembly Committee Substitute for A. 2302, at 2-3 (June 10, 2002); Senate Budget and Appropriations Committee, Statement to Senate Committee Substitute for S. 1378, at 2-3 (June 27,2002)).
In addition, if New Jersey law was not decoupled from federal law, the Committees projected revenue losses of approximately: $60 million for FY 2003; $120 million for FY 2004; $180 million for FY 2005; and $240 million for FY 2006. Id. In reaction to EGTRR, the Legislature introduced Senate Bill No. 1378 on March 25, 2002, and Assembly Bill No. 2302 on May 9, 2002. Oberhand, supra, 193 N.J. at 564, 940 A.2d 1202.
The Statement to Senate Bill No. 1378 explained the Legislature’s decoupling from federal law:
*27 New Jersey’s estate tax is based on a credit allowed by federal law against the federal estate tax.... Under changes in the federal estate tax enacted in 2001, New Jersey’s estate tax will be reduced.... This bill preserves the New Jersey estate tax as it existed up to the point at which the changes in federal law took effect by providing that the [New Jersey estate] tax would be computed as though the terms of the federal estate tax ... continued to apply to the estates of resident decedents dying after December 31, 2001 ____
[Statement to Senate Bill, No. 1378, at 4 (March 25,2002) (emphasis added).]
On July 1, 2002, the Legislature amended N.J.S.A. 54:38-1, making it retroactive to January 1, 2002. Oberhand, supra, 193 N.J. at 564, 940 A.2d 1202; See N.J.S.A. 54:38-1.
Against the foregoing legislative background, Stanley Kosakowski (“Mr. Kosakowski”) died on March 22, 2002, with his wife, Stella Kosakowski (“Mrs. Kosakowski”), predeceasing him on February 9, 2002. On April 3, 2002, Mr. Kosakowski’s will[1] was admitted to probate. The Estate filed its New Jersey Resident Decedent Estate Tax return on December 23, 2002, listing the taxable estate as $5,394,851 with $438,182 due in New Jersey estate tax. The Estate paid this amount in full and in April 2005, it filed a refund claim for $109,545 citing Oberhand, where the court applied the doctrine of manifest injustice to eliminate the retroactive application of the Statute to the decedent’s estate. See Oberhand, supra, 193 N.J. 558, 940 A.2d 1202. On April 18, 2005, the Director denied the Estate’s refund claim. The Estate filed the instant appeal with the Tax Court.

ARGUMENTS

The Director argues that the present matter is distinguishable from Oberhand in that, unlike the decedents in Oberhand, Mr. Kosakowski did not demonstrate reliance to his “prejudice, on the law that [was] ... changed.” Oberhand, supra, 22 N.J.Tax at 68 (quoting Nobrega v. Edison Glen Assocs., 167 N.J. 520, 546, 772 A.2d 368 (2001)). Mr. Kosakowski simply left the “rest, residue and remainder” of his estate to his wife and then to his daughter, if his wife predeceased him.
*28 Furthermore, prior to the amendment of N.J.S.A. 54:38-1, the decedents in Oberhand did not owe any estate tax, unlike the Estate, which would have owed $328,636.63[2] regardless of the Statute’s retroactive application. See Oberhand, supra, 193 N.J. 558, 940 A.2d 1202. According to the Director, the disputed $109,545 was the result of returning New Jersey estate tax law to its 2001 level[3], which is precisely the revenue saving goal advanced by the Legislature.
The Estate’s challenge to the Director’s denial of its refund claim is twofold. First, the Estate argues that, pursuant to Oberhand, the doctrine of manifest injustice must bar the retroactive application of N.J.S.A 54:38-1 because Mr. Kosakowski relied on prior law and did not have an opportunity to alter his will to account for the retroactive application of N.J.S.A. 54:38-1. See Oberhand, supra, 193 N.J. 558, 940 A.2d 1202. Although Mr. Kosakowski’s will did not contain credit shelters or trusts, like those in Oberhand, the Estate asserts that there is “a widely-accepted intent on the part of most testators to save taxes.” In re Estate of Branigan, 129 N.J. 324, 335, 609 A.2d 431 (1992). Accordingly, the absence of such structuring in Mr. Kosakowski’s will cannot justify the Director’s distinction. See Id. Finally, contrary to the Director’s assertion, the Estate argues that the disputed $109,545 constituted a new tax.
Second, based upon the principles of due process and equal protection embodied in the Federal and State Constitutions, the Estate challenges the constitutionality of N.J.S.A. 54:38-1 when applied retroactively[4]. In support of its state equal protection *29 argument, the Estate cites the concurring opinion of Justice Albin in Oberhand claiming that the “retroactive application of N.J.S.A. 54:38-1 treats unequally the estates of only those people who had the misfortune to die between January 1 and June 30 of 2002.” Oberhand, supra, 193 N.J. at 578, 940 A.2d 1202. The Estate also argues that federal equal protection has been violated because similarly situated persons have received different tax burdens. See Allegheny Pittsburgh Coal Co. v. County Comm’n, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).
The Estate additionally contends that it is a facial violation of equal protection for the Supreme Court to apply “the doctrine of manifest injustice to shelter [Mrs.] Oberhand and [Mr.] Seider from [the] retroactive application” of the Statute but “deny the Estate similar relief.” Furthermore, the Estate claims that N.J.S.A. 54:38-1 denies due process protections since, unlike Klebanow v. Glaser, where the Supreme Court found a retroactive capital gains tax constitutional, making N.J.S.A 54:38-1 only prospective will not cause any serious revenue concerns. See Klebanow v. Glaser, 80 N.J. 367, 377, 403 A.2d 897 (1979). The Estate also cites Nichols v. Coolidge for the proposition that under federal law, retroactive estate and gift taxes are unconstitutional. See Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184 (1927).
In response to the Estate’s constitutional challenges, the Director argues that the retroactivity of the Statute is rationally related to the legitimate government goal of raising revenue and must be upheld.

SUMMARY JUDGMENT

R. 4:46-2(e) provides that summary judgment is appropriate where the:
pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a. matter of lam.
[Id. (emphasis added).]
The burden is on the moving party to demonstrate that no genuine issue of material fact exists. Judson v. Peoples Bank & Trust Co., *30 17 N.J. 67, 74, 110 A.2d 24 (1954); See Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 447, 916 A.2d 440 (2007).
However, the party opposing the motion cannot defeat summary judgment simply by pointing to any fact in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). Instead, a non-moving party must produce evidence demonstrating a genuine factual dispute. Id. The filing of “cross-motion[s] represents to the court the ripeness of’ summary judgment. Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J.Super. 158, 177, 943 A.2d 881 (App.Div.), certif. denied., 196 N.J. 85, 951 A.2d 1038 (2008); See also Petrocco v. Dover Gen. Hosp. & Med. Ctr., 273 N.J.Super. 501, 525, 642 A.2d 1016 (App.Div.), certif. denied, 138 N.J. 264, 649 A.2d 1284 (1994).
Here, neither the Director nor the Estate allege any factual disputes. Accordingly, the court finds this matter ripe for summary judgment.

MANIFEST INJUSTICE

It is “a fundamental principle of jurisprudence that [the] retroactive application of new laws involves a high risk of being unfair.” Gibbons v. Gibbons, 86 N.J. 515, 522, 432 A.2d 80 (1981) (quoting Weinstein v. Investors Sav. & Loan Assoc., 154 N.J.Super. 164, 167, 381 A.2d 53 (App.Div.1977), certif. denied., 75 N.J. 598, 384 A.2d 828 (1978)). However, a statute will be applied retroactively when “the Legislature expresses [such] an intent”, unless the “application would result in ‘manifest injustice.’ ” Oberhand, supra, 193 N.J. at 571, 940 A.2d 1202.
There is no “litmus test” for manifest injustice. Id. at 572, 940 A.2d 1202; See Phillips v. Curiale, 128 N.J. 608, 625, 608 A.2d 895 (1992). Rather, the “determination of whether ‘manifest injustice’ exists requires a weighing of the public interest in the retroactive application of the statute against the affected party’s reliance on the previous law, and the consequence of that reliance.” Oberhand, supra, 22 N.J.Tax at 68 (quoting Nelson v. Board of Ed., 148 N.J. 358, 372, 689 A.2d 1342 (1997)).
*31 Manifest injustice exists where there is “prejudice ... [and] the consequences of [ ] reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively.” Oberhand, supra, 22 N.J.Tax. at 68 (quoting Nobrega, supra, 167 N.J. at 546, 772 A.2d 368). The Supreme Court has applied this doctrine “sparingly”. Oberhand, supra, 193 N.J. at 571, 940 A.2d 1202; See Nobrega, supra, 167 N.J. at 546, 772 A.2d 368.
The Tax Court in Oberhand held that the estate of decedent, Mrs. Oberhand, should not be subject to the retroactive application of N.J.S.A. 54:38-1 because of the doctrine of manifest injustice. Oberhand, supra, 22 N.J.Tax at 57. Mrs. Oberhand died on March 28, 2002, three days after Senate Bill No. 1378 was introduced but prior to the July 1, 2002 amendment of N.J.S.A. 54:38-1. Id. at 57-58. Her will, dated April 3, 1998, established two trusts: Marital Trust and Family Trust. Id. at 58. The Marital Trust was to receive “property having a value exceeding the sum of ... the maximum amount, if any, that can pass pursuant to this Will free of federal estate tax. ...” Id. (emphasis added). The Family Trust was to receive any excess amount therefrom. Id. It was undisputed that Mrs. Oberhand relied on prior existing law in executing her will. Id. at 70.
On appeal, the Appellate Division consolidated Mrs. Oberhand’s appeal with the appeal of decedent, Eugene Seidner (“Mr. Seid-ner”). Oberhand, supra, 388 N.J.Super. at 241, 907 A.2d 428. Similar to Mrs. Oberhand, Mr. Seidner executed his will during the 1990s, died between January 1 and June 30 of 2002, and utilized trusts in his will to avoid estate tax. Id. The Appellate Division reversed the Tax Court finding that the “doctrine of manifest injustice has no place in the judicial evaluation of retroactive tax laws.” Id. at 248, 907 A.2d 428.
The Supreme Court granted certification. See Oberhand, supra, 193 N.J. 558, 940 A.2d 1202. Analyzing the issue of manifest injustice, the Supreme Court weighed Mrs. Oberhand and Mr. Seidner’s reliance on the prior law and their inability to change their wills against the public interest in retroactivity. Id. at 573, *32 940 A.2d 1202. The Court found that Mrs. Oberhand and Mr. Seidner relied on prior law to formulate their estate plans “in such a fashion that no federal or state tax would be due.” Id. The Supreme Court also found that Mrs. Oberhand and Mr. Seidner lacked the opportunity to change their wills and, but for the Legislature’s amendment of N.J.S.A. 54:38-1, neither would not have been subject to estate tax. Id. at 573-74, 940 A.2d 1202.
The Court held that the “harsh and unfair” consequences to Mrs. Oberhand and Mr. Seidner outweighed the public interest in retroactivity because the state’s interest in preserving revenue from the retroactive period was “not as relevant” as the preservation of future revenue. Id. at 573, 940 A.2d 1202. Accordingly, the Supreme Court applied the doctrine of manifest injustice to bar the retroactive application of the Statute. Id. at 570, 574, 940 A.2d 1202.
In the present matter, the court finds that Oberhand is distinguishable since there is no evidence that Mr. Kosakowski relied, to his detriment, on the prior law. Mr. Kosakowski’s will provided, in part:
[a]ll the rest, residue and remainder of my estate, real, personal or mixed, of whatever nature and wheresoever situate, I give and bequeath and devise to my beloved wife, STELLA J. KOSAKOWSKI, to have and to hold forever, but if she should predecease me, and if she and I shall die simultaneously or in a common accident or common disaster, then in such event or either event, I give and devise all the real, residue and remainder of my estate, real, personal or mixed, of whatever nature and wheresoever situate, to my beloved daughter, JOAN CIAG-LIA.
Unlike Oberhand, where the structure and language of the decedents’ respective wills indicated a reliance on the prior law, and made the avoidance of tax an “essential element” of their estate plans, Mr. Kosakowski’s will makes only a blanket provision passing his estate to his spouse or to his daughter, if his wife predeceased him. See Oberhand, supra, 193 N.J. at 576, 940 A.2d 1202.
In the unpublished ease of Estate of Stella Kosakowski v. Director, Division of Taxation[5], the Appellate Division, whose *33 reasoning is now adopted and incorporated herein by this court, found that Mrs. Kosakowski’s will “did not contain language expressing an intent to tie her dispositions to tax consequences ... [and] did not expressly rely on N.J.S.A. 5I:38-l(a) when drafting her will.” Estate of Stella Kosakowski, A-2400-08T2, 2009 WL 4724637, at *3, 2009 N.J.Super. LEXIS 3003, at *7 (App.Div., Dec. 9, 2009) (emphasis added).
With the exception of the named beneficiaries, the language of Mr. Kosakowski’s will is identical to that of his wife’s will.* [6] Accordingly, this court finds no basis for coming to a conclusion different from that of the Appellate Division when it reviewed the same language in Estate of Stella Kosakowski,[7] The court is satisfied that Mr. Kosakowski, just like his wife, did not expressly rely on N.J.S.A. 51:38-1 when drafting his will. See Id. While it may be true, as the Estate proffers, that the general “intent on the part of most testators [is] to save taxes”, as espoused in Estate of Branigan, to simply infer such intent in every instance would be contrary to the holding of that case, and would ignore the express intent that can be derived from the plain and unambiguous language of Mr. Kosakowski’s will. See Estate of Branigan, supra, 129 N.J. at 335, 609 A.2d 431 (emphasis added).

CONSTITUTIONAL CHALLENGES

a. Equal Protection: New Jersey & Federal
The Fourteenth Amendment to the United States Constitution states that no State shall “deny to any person within its jurisdic *34 tion the equal protection of the laws.” U.S. Const, Amend. 14, Sec. 1. In contrast, Article 1, Paragraph 1 of the State Constitution provides that:
[a]U persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness.
[N.J. Const., Art. 1, Para. 1 (1947).]
Although the State Constitution does not include the words “equal protection”, the Supreme Court held that Article 1, Paragraph 1 protects “against the unequal treatment of those who should be treated alike.” Greenberg v. Kimmelman, 99 N.J. 552, 568, 494 A.2d 294 (1985).
Federal equal protection analysis relies on a tiered review. Id. at 567, 494 A.2d 294. However, New Jersey courts do not follow the federal “two-tiered equal protection analysis.”[8] Greenberg, supra, 99 N.J. at 567, 494 A.2d 294; See Robinson v. Cahill, 62 N.J. 473, 492, 303 A.2d 273 (1973). Instead, the Supreme Court in Collingswood v. Ringgold, adopted the “ ‘means-focused’ standard.” Collingswood, 66 N.J. 350, 370, 331 A.2d 262 (1975). The Court described this analysis as a narrow inquiry into “whether there is an appropriate governmental interest suitably furthered by the differential treatment.” Id. (quoting Police Dep’t of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). This “balancing test” considers “the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction.” Greenberg, supra, 99 N.J. at 567, 494 A.2d 294; See Right to Choose v. Byrne, 91 N.J. 287, 308-09, 450 A.2d 925 (1982).
Relying on Justice Albin’s concurring opinion in Oberhand,[9] the Estate argues that the Statute is unconstitutional since its treat *35 ment of the estates of decedents dying between January 1 and June 30 of 2002 violates equal protection. See Oberhand, supra, 193 N.J. at 578-79, 940 A.2d 1202. Justice Albin explained that:
The retroactive application of N.J.S.A. 54:38-1 treats unequally the estates of only those people who had the misfortune to die between January 1 and June 30 of 2002. Cynthia Oberhand and Eugene Seidner prepared their wills relying on the then-existing estate tax laws in New Jersey. After their deaths in early 2002, the Legislature enacted a new estate tax law and retroactively applied it to January 1, 2002. Under the applicable law at the time of their deaths, the Oberhand and Seidner estates owed no New Jersey estate taxes. Under the retroactively applied law, both estates owed taxes ... Changing the rules of the game after the game has been played is not permissible in a sports event and is contrary to fundamental notions of fairness guaranteed under our State Constitution when, as here, citizens rely to their detriment on the existing laws to make important financial decisions. Because Ms. Oberhand and Mr. Seidner died before passage of the new law, their financial decisions were irrevocable. Manifest injustice and the denial of fundamental fairness are two ways of expressing the same concept. The statute’s unequal and seemingly irrational treatment of the estates of those who died between January 1 and June 30 of 2002 cannot be squared with any conception of fundamental fairness under our State Constitution.
[Id. (Albin, J., concurring).]
The Director contends that the rationale of applying N.J.S.A. 54:38-1 retroactively was to stem revenue losses, which would have resulted from changes in federal estate tax law effective on January 1, 2002.
The Director’s contention is persuasive. “In drawing distinctions, the Legislature need not proceed with mathematical precision ... As long as the legislative classification is rational----” In Re C.V.S. Pharm. Wayne, 116 N.J. 490, 502, 561 A.2d 1160 (1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990). Accordingly, the Supreme Court has held that statutory “classifications [that] do not discriminate arbitrarily between persons who are similarly situated” is a matter “of legislative prerogative”. Greenberg, supra, 99 N.J. at 577, 494 A.2d 294.
Some of the “anticipated revenue loss[es] for fiscal year 2003 could be attributable ... to deaths occurring during the period of retroactive application because New Jersey estate tax *36 returns ... are not due until nine months after the date of death.” Oberhand, supra, 22 N.J.Tax at 67; See N.J.S.A. 54:38-5. The court is satisfied that N.J.S.A. 54:38-1 does not violate principles of state equal protection since curtailing revenue losses, between the effective dates of EGTRR and the amendment to N.J.S.A 54:38-1, is an appropriate state interest that justifies the difference in treatment.
Turning to an analysis of equal protection under the Fourteen Amendment, the court notes that “federal equal protection analysis traditionally involves different tiers or levels of review.” Greenberg, supra, 99 N.J. at 565, 494 A.2d 294. If “a fundamental right or suspect class is involved, the legislative classification is subject to strict scrutiny.” Id. However, other rights or classes are analyzed under only a rational basis test. Id.
In Allegheny Pittsburgh Coal Co., the United State Supreme Court recognized that States possess “broad powers to impose and collect taxes.” Allegheny Pittsburgh Coal Co., supra, 488 U.S. at 344, 109 S.Ct. at 638, 102 L.Ed.2d at 697. In fact, in analyzing a Fourteenth Amendment equal protection claim, the Supreme Court noted in Salorio v. Glaser, that when “determining whether the classification employed by the State bears a rational relation to a legitimate governmental purpose, it is important to remember that [S]tates have been accorded great latitude in the field of taxation.” Salorio v. Glaser, 82 N.J. 482, 515, 414 A.2d 943, cert. denied, 449 U.S. 804, 101 S.Ct. 49, 66 L.Ed.2d 7 (1980); See also Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940) (“in taxation, even more than in other fields, legislatures possess the greatest freedom in classification”).
The “Fourteenth Amendment was not intended to compel [] State[s] to adopt an iron rule of equal taxation.” Madden, supra, 309 U.S. at 88, 60 S.Ct. at 408, 84 L.Ed. at 593 (quoting Bell’s Gap R. Co. v. Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892 (1890)). Consequently, a “State may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable.” Allegheny Pittsburgh Coal Co., supra, 488 U.S. at 344, 109 S.Ct. at *37 638, 102 L.Ed.2d at 697. The Court in Allegheny Pittsburgh Coal Co., held that if “the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.” Id. (quoting Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883 (1910)).
As aforementioned, the court finds the different classification of persons dying between January 1 and June 30, 2002 and those dying thereafter to be reasonably based and rationally related to the Legislature’s goal of preventing revenue loss from changes in federal estate tax law. Therefore, based on the foregoing, the court rejects Estate’s argument that N.J.S.A. 54:38-1 violates federal equal protection.
Lastly, there is no merit to the Estate’s argument that applying the equitable doctrine of manifest injustice to the estates in Oberhand, but not to Mr. Kosakowski’s estate, violates equal protection because it treats similarly situated[10] decedents differently. See Oberhand, supra, 193 N.J. at 574, 940 A.2d 1202. This argument ignores the Legislature’s prerogative that when it “expresses an intent that [a] statute is to be applied retroactively, the statute should be so applied.” Oberhand, supra, 193 N.J. at 571, 940 A.2d 1202; See Gibbons, supra, 86 N.J. at 522, 432 A.2d 80. The very same equal protection argument was made and rejected in the unreported Tax Court case of Estate of Stella Kosakowski v. Director, Division of Taxation, Docket No. 004619-2005 (Dec. 12, 2008), aff'd, 2009 WL 4724637, 2009 N.J.Super. LEXIS 3003. This court found then, as it now again finds and incorporates herein, that[11]:
*38 The estate’s argument tries to expand Justice Albin’s concurring opinion to mean that if the court applies manifest injustice in the case of one person dying between January 1, 2002 and July 1, 2002, then it must do so for all other cases. This argument misinterprets the Justice’s opinion. Justice Albin concluded that manifest injustice should not be used at all in such cases. Rather, he found it to be against fundamental notions of fairness when citizens rely on the current law to make important, irrevocable financial decisions only to have a law applied retroactively to defeat that purpose.
[Id. (emphasis added).]
Likewise, federal equal protection does not compel a contrary result. See Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (quoting Hecht Co. v. Bowles, 321 U.S. 321, 329-30, 64 S.Ct. 587, 88 L.Ed. 754 (1944)) (equity jurisdiction allows courts “to mould each decree to the necessities of the particular ease. Flexibility rather than rigidity has distinguished it”); See also Weinberger v. Romero-Barcelo, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (holding that the equitable remedy of injunctive relief “has never been regarded as strictly a matter of right” and finding that the “exercise of equitable discretion ... must include the ability to deny as well as grant injunc-tive relief____”)
b. Due Process: New Jersey
The Estate argues that the retroactive application of N.J.S.A. 54:38-1 violates due process since the considerations, which led the Supreme Court to find a retroactive capital gains tax to be constitutional in Klebanow v. Glaser, are not present in this matter[12]. The Estate’s argument ignores the fact that the constitutionality of N.J.S.A. 54:38-1 has previously been adjudicated. See Oberhand, supra, 388 N.J.Super. at 242, 907 A.2d 428. In Oberhand, the Appellate Division “agree[d] with the Tax Court’s determination that” N.J.S.A. 54:38-1 “does not violate substantive due process____” Id. at 245, 907 A.2d 428. Based upon the *39 Appellate Division’s ruling, this court is satisfied that the retroactive application of N.J.S.A. 54:38-1 does not violate New Jersey due process.
c. Due Process: Federal
The Fourteenth Amendment of the Federal Constitution requires that retroactive legislation must “meet a burden not faced by legislation that has only future effects ... [T]hat burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.” United States v. Carlton, 512 U.S. 26, 31, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) (quoting Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984)).
In Carlton, the Supreme Court addressed whether the retroactive application of the 1987 amendment to the federal estate tax was constitutional. Carlton, supra, 512 U.S. at 27, 114 S.Ct. at 2020, 129 L.Ed.2d at 26. The decedent’s estate in Carlton filed a refund claim, arguing that the retroactive application of the amendment violated due process. Id. at 29, 114 S.Ct. at 2021, 129 L.Ed.2d at 27. Citing its previous decisions, the Supreme Court noted that it had “repeatedly [ ] upheld retroactive tax legislation against [ ] due process challenge[sj.” Id. at 30, 114 S.Ct. at 2021, 129 L.Ed.2d at 28. The Court found that the period of retroactivity was “modest” and Congress’s rationale (i.e. to remedy a mistake in the original legislation, which resulted in significant revenue losses) was reasonable. Id. at 32, 114 S.Ct. at 2023, 129 L.Ed.2d at 29. Further, the Court rejected the taxpayer’s contentions that it relied, to its detriment, on the original version of the statute, finding that “[t]ax legislation is not a promise.” Id. at 33, 114 S.Ct. at 2023, 129 L.Ed.2d at 30.
The Estate relies on Nichols v. Coolidge, arguing that federal courts have found retroactive estate taxes unconstitutional. See Nichols, supra, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184. However, the Court in Carlton determined that the standard under which Nichols was decided “has long since been discarded.” *40 Carlton, supra, 512 U.S. at 34, 114 S.Ct. at 2024, 129 L.Ed.2d at 30. The Court found that unlike the amendment in Carlton, which did not create a “wholly new tax” and had a limited retroactive effect, Nichols pertained to an “estate tax which embraced a transfer that occurred 12 years earlier.” Id. The Court concluded that there is no bright line rule that retroactive estate taxes are per se unconstitutional, finding that Nichols “[does not] stand for the proposition that retroactivity is permitted with respect to income taxes, but prohibited with respect to gift and estate taxes.” Id.
Similar to Carlton, the retroactive period of N.J.S.A. 54:38-1 was brief, enacted to remedy a revenue loss, and did not create a new tax[13]. Rather, the Statute returned New Jersey estate tax law to its December 31, 2001 level. Accordingly, the court is satisfied that the retroactive application of N.J.S.A. 54:38-1 does not violate federal due process.

CONCLUSION

For the reasons set forth herein, the court grants summary judgment in favor of the Director. The court finds that the doctrine of manifest injustice should not be applied to bar the retroactive application of N.J.S.A. 54:38-1 to the Estate since Mr. Kosakowski did not rely, to his prejudice, on prior existing law. In addition, the court rejects the Estate’s constitutional due process and equal protection challenges.
The Tax Court Clerk/Administrator shall enter judgment consistent with this opinion.

 Mr. Kosakowski executed his will on May 24, 1997.

 The Assistant Chief of the Estate and Inheritance Tax Section of the Division of Taxation, certified that if New Jersey estate tax was still coupled with federal law in 2002, the Estate’s liability would still have been $328,636.63. This amount is not disputed by the Estate.

 $109,545 is the difference between $328,637 (the amount that would have been due if the Statute was not enacted) and $438,182 (the amount due under N.J.S.A. 54:38-1).

 The Estate challenges the retroactive, but not the prospective, application of N.J.S.A. 54:38-1.

 See Comment 2 to R. 1:36-3 ("the court itself may not cite an unpublished opinion except to the limited extent required by the application of preclusionary legal principles or case history").

 The Estate agreed at argument that the wills were identical, except for the beneficiaries.

 Although the facts of the instant matter can be distinguished from those of Stella Kosakowski, the differences are not pertinent to the conclusion that Mr. Kosakowski did not rely on the prior law in drafting his will.

 New Jersey’s "development of an independent analysis [for equal protection] follows basically from [the Supreme Court’s] recognition that the [Federal and State] Constitutions contain different texts.” Greenberg, supra, 99 N.J. at 567, 494 A.2d 294.

 The majority opinion provides that the Court "need not examine the constitutional issue” previously decided by the Tax Court and Appellate Division because *35 the decedents in Oberhand, "abandoned” their constitutional challenge. Oberhand, supra, 193 N.J. at 571, 940 A.2d 1202.

 According to the Estate, Mrs. Oberhand, Mr. Seidner, and Mr. Kosakowski are similarly situated because they: died between January 1 and June 30 of 2002; executed their wills prior to the introduction of Senate Bill No. 1378; and lacked an opportunity to conduct estate planning to account for the amendment to N.J.S.A. 54:38-1.

 See Gottlob v. Lopez, 205 N.J.Super. 417, 421, 501 A.2d 176 (App.Div.1985), certif. denied, 104 N.J. 373, 517 A.2d 384 (1986) (trial judge that "referred to his *38 earlier [unpublished] opinion for consistency and not as precedent ... violated neither the letter nor spirit of i?. 1:36-3"); See also R. 1:36-3.

 The Estate argues that New Jersey revenues would not be seriously impacted.

 The Legislature acted to “preserve revenue that would otherwise be lost because of the change in federal law.” Oberhand, supra, 388 N.J.Super, at 241, 907 A.2d 428; See also Oberhand, 193 N.J. at 564, 940 A.2d 1202 (“In an effort to counter the loss of revenue ... the [New Jersey] legislature acted to decouple the New Jersey estate tax from the federal estate tax by amending its estate tax law....”)