47 A.3d 760

ESTATE OF STANLEY KOSAKOWSKI, PLAINTIFF–APPELLANT,
v. DIRECTOR, NEW JERSEY DIVISION OF TAXATION,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 15, 2012—Decided July 11, 2012.

Before Judges PAYNE, SIMONELLI and ACCURSO.

*Richard B. Nashel* argued the cause for appellant (*Nashel and Nashel, L.L.C.*, attorneys; *Mr. Nashel*, on the brief).

*Heather Lynn Anderson*, Deputy Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa*, Attorney General, attorney; *Lewis A. Scheindlin*, Assistant Attorney General, of counsel; *Ms. Anderson*, on the brief).

The opinion of the court was delivered by

PAYNE, P.J.A.D.

Plaintiff, the Estate of Stanley Kosakowski, appeals from an order of summary judgment, entered by Tax Court Judge Vito Bianco in favor of the defendant Director, Division of Taxation, upholding as constitutional, under State and Federal due process and equal protection analysis, the retroactive application of amendments to *N.J.S.A.* 54:38–1 to the Estate, thereby increasing its tax liability and holding that the doctrine of manifest injustice should not be applied to bar the retroactive application of *N.J.S.A.* 54:38–1 to the Estate because decedent did not rely, to his detriment, on prior existing law.

The matter arose in the following fashion. Stanley Kosakowski died on March 22, 2002. On April 3, 2002, Kosakowski's will was admitted to probate, and his estate was administered pursuant to the terms of a simple will, executed on May 24, 1997, that

contained no devices to avoid taxes. At the time of his death, Kosakowski's taxable estate was valued at $5,394,851, with $438,182 due in New Jersey estate tax, which was paid on December 23, 2002.

Significant legislative changes affected the amount of the estate tax paid to the State. In 2001, Congress passed the Economic Growth and Tax Relief Reconciliation Act of 2001. *See Pub.L. No.* 107–16, 115 *Stat.* 38 (2001). That act increased the amount that could be transferred at death, free of federal tax under 26 *U.S.C.A.* § 2010(c) as a unified tax credit against estate taxes, by raising the federal estate tax exclusion amount from $675,000 to $1,000,000, effective January 1, 2002—an amount that would be gradually increased to $3,500,000 by 2009—and introduced a gradual phase-out of the state death tax credit contained in 26 *U.S.C.A.* § 2011(b). Because New Jersey coupled its estate tax to the federal tax, the effect of the federal act was to decrease State estate tax revenue. Therefore, in July 2002, the State Legislature passed, and the Governor signed into law, amendments to *N.J.S.A.* 54:38–1 that decoupled the New Jersey estate tax from its federal counterpart and provided that State taxes would be computed in accordance with the federal state tax credit in effect on December 31, 2001, which was $675,000. *See N.J.S.A.* 54:38–1a(2). The statute was made retroactive to January 1, 2002.

Challenges to the retroactive application of the amended *N.J.S.A.* 54:38–1 were instituted in the Tax Court by the Estates of Cynthia A. Oberhand and Eugene M. Seidner, both of whom had engaged in tax planning in reliance on State and Federal law as it existed up to January 1, 2002 in order to avoid the payment of estate taxes. Both individuals died during the period between January 1, 2002 and July 1, 2002, and their estates were adversely affected by the retroactive application of *N.J.S.A.* 54:38–1. In a published opinion, *Oberhand v. Director, Division of Taxation,* 22 *N.J.Tax* 55 (Tax.Ct.2005), Judge Kuskin found the Legislature's determination to apply the amendments to the estate tax statute retroactively did not render the statute unconstitutional under

substantive due process standards, when measured under a rational basis test. *Id.* at 65–67. Nonetheless, Judge Kuskin found that the retroactive application of the amendments to Oberhand's estate would result in a manifest injustice that was not outweighed by the public's interest in avoiding a diminution of tax revenues. *Id.* at 68–70, 72. The court held:

> Mrs. Oberhand reasonably relied on existing federal and New Jersey estate tax law in preparing the Will and in not amending it before her death. New Jersey's fiscal concerns are insufficient to outweigh that reliance, and it would be unfair to apply the Amendments retroactively to impose on the Estate a tax she specifically and expressly sought to avoid by crafting her estate plan in accordance with existing law.
>
> [*Id.* at 76.]

Summary judgment was thus granted in the Estate's favor on its claim that no tax was due. *Ibid.*

On appeal of *Oberhand,* as well as a similar judgment in favor of the Estate of Seidner,[1] we affirmed Judge Kuskin's conclusion that the amendments did not violate substantive due process. *Oberhand v. Dir., Div. of Taxation,* 388 *N.J.Super.* 239, 245, 907 *A.*2d 428 (App.Div.2006). However, we disagreed with his application of the doctrine of manifest injustice in a retroactive taxation context. *Id.* at 245–48, 907 *A.*2d 428. We held:

> We believe the overarching principle governing this litigation is this: once the concerns of substantive due process have been met by retroactive tax legislation, "judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches. . . .' "
>
> [*Id.* at 247, 907 *A.*2d 428 (quoting *U.S. v. Carlton,* 512 *U.S.* 26, 31, 114 *S.Ct.* 2018, 2022, 129 *L.Ed.*2d 22, 28 (1994) (citation omitted)).]

We therefore reversed the tax court. *Id.* at 247–48, 907 *A.*2d 428.

The decision on the parties' further appeal to the Supreme Court revealed a split of opinion as to the applicability of the doctrine of manifest necessity to avoid an explicit declaration of statutory retroactivity in circumstances in which reliance upon the prior state of the law for tax planning purposes could be demonstrated. *See Oberhand v. Dir., Div. of Taxation,* 193 *N.J.* 558, 940 *A.*2d 1202 (2008). In an opinion by Justice Wallace, a plurality of

---

[1] The legal basis for that decision was set forth in a letter opinion.

the Court characterized the doctrine of manifest injustice as being " 'designed to prevent unfair results that do not necessarily violate any constitutional provision.' " *Id.* at 572, 940 *A.*2d 1202 (quoting *State Troopers Fraternal Ass'n of N.J., Inc. v. State of N.J.,* 149 *N.J.* 38, 54, 692 *A.*2d 519 (1997)). Reversing that aspect of our decision in which we declined to apply the doctrine of manifest injustice, while affirming the remainder, the Court recognized that doctrine as offering an equitable remedy in the circumstances presented and determined that the two Estates' interests in preserving decedents' careful plans to legally avoid estate taxes outweighed the public interest in preserving six months of revenue, the amount of which had not been estimated at the time the legislation was passed. *Id.* at 572–74, 940 *A.*2d 1202.

In a concurring opinion, Justice Albin took the position, on separation of powers grounds, that the Court could not contravene a clear legislative declaration of statutory retroactivity without a finding that the statute, as applied, was unconstitutional. *Id.* at 575–77, 940 *A.*2d 1202. Although he recognized that, in a series of decisions, the Court had held otherwise, he regarded those cases as wrongly decided, and he urged the Court to remedy its legal analysis. *Id.* at 576–77, 940 *A.*2d 1202. "We should admit that this Court erred in its earlier cases and return to sound principles of constitutional jurisprudence." Nonetheless, because the Justice found that the statute, as retroactively applied, violated the substantive due process protections contained in Article I, Paragraph 1 of the State's Constitution, he concurred with the plurality's determination that the two Estates were exempt from payment of taxes that they otherwise would have avoided had the law remained unchanged. *Id.* at 575, 577–79, 940 *A.*2d 1202.

In a dissenting opinion, Justice Long, joined by Justice Hoens, argued that principles of manifest injustice were applicable only where there was room for statutory interpretation, in order that an unjust intention not be attributed to the Legislature. *Id.* at 579–81, 940 *A.*2d 1202.[2] Yet, "with the passage of time ... our

---

[2] Justice Albin agreed with this analysis. *Id.* at 576 n. 1, 940 *A.*2d 1202.

courts came to misunderstand the rule of manifest injustice as one empowering them to rewrite clear legislative enactments regarding retroactivity." *Id.* at 581, 940 *A.*2d 1202. The Justice thought: "The source of the mistake was likely misconstruing manifest injustice as an 'equitable' doctrine rather than as an interpretive yardstick." *Id.* at 582, 940 *A.*2d 1202. Like Justice Albin, she observed: "I do not fault my colleagues for recognizing our prior precedent, only for failing to repudiate it." *Ibid.*

The Justice thus concluded:

> In my view, aside from a declaration of unconstitutionality, only two dispositions are available in this case. If the Court determines that *N.J.S.A.* 54:38-1 is either silent or ambiguous regarding retroactive effect, it can interpret the statute to avoid manifest injustice. On the contrary, if the Court declares the statute to unambiguously require retroactive application, there is no room for interpretation and the statute must be applied as written. Because we cannot both conclude that the Legislature has spoken clearly and unambiguously about its intentions and at the same time rely on our view of equity to achieve a different result, I would affirm the judgment of the Appellate Division.
>
> [*Id.* at 582–83, 940 *A.*2d 1202.]

With that background in mind, we turn to the present appeal. In this case the Estate paid the full amount of tax owing as the result of the retroactive application of *N.J.S.A.* 54:38-1, and then, after the issuance of the Tax Court's decision in *Oberhand,* it sought a refund of the $109,545 that would not have been owing, but for the retroactivity of the statute. The Director denied the Estate's refund claim, distinguishing Kosakowski's position from that of Oberhand and Seidner, because Kosakowski had not engaged in any tax planning and could not demonstrate reliance on the prior state of the law to support an equitable claim for relief premised on manifest injustice.

In a challenge to the Director's final decision in the Tax Court, the Estate claimed that it was nonetheless entitled to the benefit of the equitable doctrine, despite no overt tax planning, because the intent on the part of most testators to save taxes was "widely-accepted." *Id.* at 23 (quoting *In re Estate of Branigan,* 129 *N.J.* 324, 335, 609 *A.*2d 431 (1992)). The Estate also challenged the retroactive application of *N.J.S.A.* 54:38-1 as violating principles

of equal protection and due process embodied both in the Federal and State Constitutions. *Ibid.*

■ In a carefully-reasoned published opinion, Judge Bianco rejected the Estate's arguments. *Estate of Kosakowski v. Dir., Div. of Taxation,* 26 *N.J.Tax* 21 (Tax Ct.2011). The court found that the doctrine of manifest injustice, applied by the Supreme Court in *Oberhand,* was inapplicable in the present matter, holding:

> The court is satisfied that Mr. Kosakowski, just like his wife [whose refund claim was also rejected], *did not expressly rely on N.J.S.A. 54:38–1* when drafting his will. While it may be true, as the Estate proffers, that the general "intent on the part of *most* testators [is] to save taxes", as espoused in *Estate of Branigan,* to simply *infer* such intent in every instance would be contrary to the holding of that case, and would ignore the express intent that can be derived from the plain and unambiguous language of Mr. Kosakowski's will.
>
> [*Id.* at 33 (citations omitted).]

■ The court also rejected the Estate's State and Federal equal protection and due process challenges to the statute's retroactive application to those decedents dying between January 1 and June 30, 2002. *See id.* at 33–36 (finding it rational, under State equal protection analysis, to classify persons who died during the period of retroactivity as subject to the statute since curtailing revenue losses was an appropriate state interest that justified the difference in treatment); *id.* at 36–37 (similarly analyzing Fourteenth Amendment equal protection guarantees); *id.* at 38–39 (rejecting the Estate's substantive due process challenge under State constitutional law on the basis of the Tax Court and Appellate Division decisions in *Oberhand* ); and *id.* at 39–40 (finding a rational legislative basis to exist for the enactment of retroactive tax legislation of limited duration as required by *United States v. Carlton,* 512 *U.S.* 26, 31, 114 *S.Ct.* 2018, 2022, 129 *L.Ed.*2d 22, 28 (1994)).

Additionally, the court rejected the Estate's argument that applying the equitable doctrine of manifest injustice to the estates in *Oberhand,* but not to the Kosakowski Estate, violated equal protection because it treated similarly situated decedents differ-

ently.  The court held: "This argument ignores the Legislature's prerogative that when it 'expresses an intent that [a] statute is to be applied retroactively, the statute should be so applied.'" *Id.* at 37 (quoting *Oberhand, supra,* 193 *N.J.* at 571, 940 *A.*2d 1202).

On appeal, the Estate raises the same constitutional and equitable arguments that it did before Judge Bianco.  We reject them, affirming summary judgment in the Director's favor substantially on the basis of Judge Bianco's comprehensive opinion.  In doing so, we adhere, as we must, to the Court's current construction of the doctrine of manifest necessity as an equitable principle that may be applied to relieve the adverse consequences of the retroactive application of amended tax legislation in circumstances in which such relief is warranted.  We find no ground for application of such equitable relief in this case.

Affirmed.